# EXHIBIT A

**BARTON** ASSOCIATES

CONFIDENTIALITY, RESTRICTIVE COVENANTS,
AND PROPRIETARY RIGHTS AGREEMENT

This Confidentiality, Restrictive Covenants, and Proprietary Rights Agreement ("**Agreement**") is entered into by and between Barton & Associates, Inc., a Delaware corporation having its principal place of business at 300 Jubilee Drive, Peabody, MA 01960 (the "**Employer**") on behalf of itself, its subsidiaries, and other corporate affiliates (collectively referred to herein as the "**Employer Group**"), and ___Jamie Trainor_____ (the "**Employee**", and together with Employer, the "**Parties**") as of ___10/24/2016_____ (the "**Effective Date**").

In consideration of the Employee's at-will employment by the Employer and the Employee's access to and knowledge of Employer's Confidential Information (as defined below), which the Employee acknowledges to be good and valuable consideration for Employee's obligations hereunder, the Employer and Employee hereby agree as follows:

1.    Confidentiality and Security.

        (a)    Confidential Information. The Employee understands and acknowledges that, during the course of employment by the Employer, Employee will have access to and learn about confidential, secret, and proprietary documents, materials, data, and other information, in tangible and intangible form, of and relating to the Employer Group and its businesses and existing Clients (as defined below), Prospective Clients (as defined below), Providers (as defined below), vendors, suppliers, investors, and other associated third parties ("**Confidential Information**"). The Employee further understands, acknowledges, and agrees that the Confidential Information and the Employer's ability to reserve it for the exclusive knowledge and use of the Employer Group is of great competitive importance and commercial value to the Employer, and that improper use or disclosure of the Confidential Information by the Employee will cause irreparable harm to the Employer Group, for which remedies at law will not be adequate and may also cause the Employer to incur significant financial costs and loss of business advantages.

        Confidential Information includes but is not limited to all information that is proprietary, sensitive, secret, or not generally known to the public, in spoken, printed, electronic, or any other form or medium, relating directly or indirectly to:  business processes, practices, methods, policies, plans, publications, documents, research, operations, services, strategies, techniques, agreements, contracts, terms of agreements, transactions, potential transactions, negotiations, pending negotiations, know-how, trade secrets, computer programs, computer software, applications, operating systems, software design, web design, work-in-process, databases and database information (including without limitation customer lists, Client lists, Provider lists, contractor lists, and all associated and related information and documentation), manuals, records, articles, systems, material, sources of material, financial information, accounting information, accounting records, legal information, marketing information, advertising information, pricing information, credit information, design information, payroll information, staffing information, personnel information, employee lists, supplier lists and information, vendor lists and information, developments, reports, internal controls, security procedures, graphics, drawings, sketches, market studies, sales information, revenue, profits and losses, debts, costs, notes, communications, algorithms, product

plans, designs, styles, models, ideas, audiovisual programs, inventions, unpublished patent applications, original works of authorship, discoveries, experimental processes, experimental results, and specifications of the Employer Group or its businesses or any existing Clients or Prospective Clients, Providers, contractors, or investors and other associated third parties, or of any other person or entity that has entrusted information to the Employer in confidence.

The Employee understands that the above list is not exhaustive, and that Confidential Information also includes other information that is marked or otherwise identified as confidential or proprietary, or that would otherwise appear to a reasonable person to be confidential or proprietary in the context and circumstances in which the information is known or used.

The Employee understands and agrees that any Confidential Information developed by the Employee in the course of the Employee's employment by the Employer shall be subject to the terms and conditions of this Agreement as if the Employer furnished the same Confidential Information to the Employee in the first instance. Confidential Information shall not include information that is generally available to and known by the public, <u>provided</u> that such disclosure to the public is through no direct or indirect fault of the Employee or person(s) acting on the Employee's behalf.

      (b)    <u>Certain Definitions</u>.

The term "**Client(s)**" shall mean any natural person, firm, company, limited liability company, professional limited liability company, corporation, professional corporation, non-profit corporation, partnership, limited partnership, limited liability partnership, organization, association, professional association, hospital, clinic, office, medical practice or facility, dental practice or facility, nursing practice or facility, federal, state, or local government agency, or other individual or entity (each of the foregoing, a "**Person**") for whom or which, or on whose behalf, the Employer Group provides or provided goods or services during or prior to Employee's employment by the Employer, regardless of whether Employee induced, solicited, or communicated with such Client.

The term "**Prospective Client(s)**" shall mean any Person with whom or which negotiations or discussions occurred during the course of Employee's employment by the Employer concerning the provision by the Employer Group of goods or services to such Person, regardless of whether Employee solicited or induced, or attempted to solicit or induce, such Person to give its patronage or business to the Employer Group, communicated or attempted to communicate with such Person, or participated in any negotiations or discussions with such Person.

The term "**Provider(s)**" shall mean any physician, nurse practitioner, dentist, psychiatrist, psychologist, physician assistant, optometrist, pharmacist, certified registered nurse anesthetist, or dermatologist with whom or which discussions or negotiations occurred, or with whom or which any contract or agreement was entered into, negotiated, attempted to be entered into or negotiated, or signed, or whose name or other demographic, identifying, or contact information was or becomes included in the Employer Group's database(s).  The term "**Provider(s)**" shall also include any firm, company, limited liability company, professional limited liability company, corporation, professional corporation, non-profit corporation, partnership, limited partnership, limited liability partnership, organization, association, or professional association that is directly or indirectly owned or otherwise controlled by or through any Provider.

(c)     <u>Disclosure and Use Restrictions</u>. The Employee agrees and covenants:  (i) to treat all Confidential Information as strictly confidential; (ii) not to directly or indirectly disclose, publish, communicate, or make available Confidential Information, or allow it to be disclosed, published, communicated, or made available, in whole or part, to any third party not having a need to know and authority to know and use the Confidential Information in connection with the business of the Employer Group and, in any event, not to anyone outside of the direct employ of the Employer Group except as required in the performance of the Employee's authorized employment duties to the Employer or with the prior written consent of an authorized officer acting on behalf of the Employer in each instance (and then, such disclosure shall be made only within the limits and to the extent of such duties or consent); and (iii) not to access or use any Confidential Information, not to copy any documents, records, files, media, or other resources containing any Confidential Information, and not to remove any such documents, records, files, media, or other resources from the premises or control of the Employer, except as required in the performance of the Employee's authorized employment duties to the Employer or with the prior written consent of an authorized officer acting on behalf of the Employer in each instance (and then, such disclosure shall be made only within the limits and to the extent of such duties or consent). Nothing herein shall be construed to prevent disclosure of Confidential Information as may be required by applicable law or regulation, or pursuant to the valid order of a court of competent jurisdiction or an authorized government agency, <u>provided</u> that the disclosure does not exceed the extent of disclosure required by such law, regulation, or order. The Employee shall provide written notice of any such order to an authorized officer of the Employer within twenty-four (24) hours of receiving such order, but in any event sufficiently in advance of making any disclosure to permit the Employer to contest the order or to seek confidentiality protections, as determined in the Employer's sole discretion. In addition, this Section does not in any way restrict or impede the Employee from exercising Employee's rights under Section 7 of the National Labor Relations Act, or from otherwise disclosing information as permitted by law.

(d)     <u>Duration of Confidentiality Obligations</u>. The Employee understands and acknowledges that Employee's obligations under this Agreement with regard to any particular Confidential Information shall commence immediately upon the Employee first having access to such Confidential Information (whether before or after Employee begins employment by the Employer) and shall continue during and after Employee's employment by the Employer until such time as such Confidential Information has become public knowledge other than as a result of the Employee's breach of this Agreement or breach by those acting in concert with the Employee or on the Employee's behalf.

2.     <u>Restrictive Covenants</u>.

(a)     <u>Non-Competition</u>.

Because of Employer Group's legitimate business interest as described herein and the good and valuable consideration offered to the Employee, during the term of Employee's employment and for one (1) year following termination of Employee's employment by the Employer, for any reason or no reason and whether employment is terminated at the option of the Employee or the Employer (the "**Restricted Period**"), the Employee agrees and covenants not to engage in any Prohibited Activity within the United States.

For purposes of this non-compete clause, "**Prohibited Activity**" is any activity in which the Employee directly or indirectly contributes the Employee's knowledge, in whole or in part, as an employee, employer, owner, operator, manager, advisor, consultant, agent, partner, director, stockholder, officer, volunteer, intern, or any other similar capacity to an entity engaged in the same or similar business as the Employer Group, including those engaged in the business of: (i) seeking, locating, and recruiting for temporary locum tenens assignment openings or contract openings or assignments for Providers; (ii) placing, attempting to place, and coordinating the placement of Providers at such openings or any other temporary or permanent medical staffing opportunities in the United States and its territories and possessions; (iii) seeking, locating, and recruiting Providers; (iv) building, operating, and maintaining online social networking communities connecting medical professionals; (v) providing services and software connecting patients and medical professionals remotely and digitally through the use of telecommunications, audiovisual platforms, software applications, and other information technologies; and (vi) all other goods and services the Employer Group may offer during Employee's employment by the Employer. Prohibited Activity also includes any activity that may require or will inevitably require disclosure of any trade secret, proprietary information, or Confidential Information of the Employer Group.

Nothing herein shall prohibit Employee from purchasing or owning less than five percent (5%) of the publicly traded securities of any corporation, provided that such ownership represents a passive investment and that the Employee is not a controlling person of, or a member of a group that controls, such corporation.

This Section does not in any way restrict or impede the Employee from exercising protected rights to the extent that such rights cannot be waived by agreement or from complying with any applicable law, regulation, or valid order of a court of competent jurisdiction or an authorized government agency, provided that such compliance does not exceed that required by the law, regulation, or order. The Employee shall promptly provide written notice of any such order to the Employer's President.

(b)     Non-Solicitation of Employees.

The Employee agrees and covenants not to directly or indirectly solicit, hire, recruit, attempt to hire or recruit, or induce the termination of employment of any employee of the Employer Group during the Restricted Period.

(c)     Non-Solicitation of Clients and Providers.

The Employee understands and acknowledges that, because of the Employee's experience with and relationship to the Employer, the Employee will have access to and learn about much or all of the Employer Group's Client Information (as defined below) and Provider Information (as defined below).

The Employee understands and acknowledges that loss of this Client relationship and/or goodwill will cause significant and irreparable harm to the Employer Group.

The Employee agrees and covenants, during the Restricted Period, not to directly or indirectly solicit, contact (including without limitation by e-mail, regular mail, express mail, telephone, text message, fax, and instant message), attempt to contact, or meet with any of the

Employer Group's Clients or Prospective Clients for purposes of offering or accepting goods or services similar to or competitive with those offered by the Employer Group.

For purposes of this Agreement, "**Client Information**" shall mean any information of or relating to any Client or Prospective Client of the Employer Group, which shall include but not be limited to names, phone numbers, addresses, e-mail addresses, demographic information, professional information, references, referrals, order history, order preferences, negotiating and business tendencies and tactics, staffing needs, staffing preferences and tendencies, chain of command, pricing information, contract terms and conditions, margins (of either Employer Group, Client, or Prospective Client), and other information, identifying facts, and circumstances specific to any Client or Prospective Client and relevant to the Employer Group's current or potential sales, products, services, or businesses.

For purposes of this Agreement, "**Provider Information**" shall mean any information of or relating to any Provider, which shall include but not be limited to names, phone numbers, addresses, e-mail addresses, demographic information, professional information, previous experience, education, references, referrals, employment history, placement or assignment preferences, geographic preferences, Client preferences, negotiating and business tendencies and tactics, placement or assignment needs, pricing or rate information, contract terms and conditions, margins (of either Employer Group or Provider), and other information, identifying facts, and circumstances specific to any Provider and relevant to the Employer Group's current or potential sales, products, services, or businesses.

3.      Proprietary Rights.

(a)      Work Product. The Employee acknowledges and agrees that all writings, works of authorship, technology, inventions, discoveries, ideas, and other work product of any nature whatsoever, that are created, prepared, produced, authored, edited, amended, conceived, or reduced to practice by the Employee individually or jointly with others during the period of Employee's employment by the Employer and relating in any way to the business or contemplated business, research, or development of the Employer Group (regardless of when or where the Work Product is prepared or whose equipment or other resources is used in preparing the same) and all printed, physical, and electronic copies, all improvements, rights, and claims related to the foregoing, and other tangible embodiments thereof (collectively, "**Work Product**"), as well as any and all rights in and to copyrights, trade secrets (including without limitation all databases and information contained therein), trademarks (and related goodwill), patents, and other intellectual property rights therein arising in any jurisdiction throughout the world and all related rights of priority under international conventions with respect thereto, including all pending and future applications and registrations therefor, and continuations, divisions, continuations-in-part, reissues, extensions, and renewals thereof (collectively, "**Intellectual Property Rights**"), shall be the sole and exclusive property of the Employer.

For purposes of this Agreement, Work Product includes, but is not limited to, Employer Group information, including plans, publications, research, strategies, techniques, agreements, documents, contracts, terms of agreements, negotiations, know-how, computer programs, computer applications, software design, web design, work in process, databases and

database contents and information, manuals, results, developments, reports, graphics, drawings, sketches, market studies, notes, communications, algorithms, product plans, product designs, styles, models, audiovisual programs, inventions, unpublished patent applications,  original works of authorship, discoveries, experimental processes, experimental results, specifications, customer information, Client information and lists, Prospective Client information and lists, Provider information and lists, customer information and lists, marketing information, technology information, advertising information, training instructions and information (including training presentations and materials), and sales information.

(b)     Work Made for Hire; Assignment. The Employee acknowledges that, by reason of being employed by the Employer at the relevant times, to the extent permitted by law, all of the Work Product consisting of copyrightable subject matter is "work made for hire" as defined in the Copyright Act of 1976 (17 U.S.C. § 101), and such copyrights are therefore owned by the Employer. To the extent that the foregoing does not apply, the Employee hereby irrevocably assigns to the Employer, for no additional consideration, the Employee's entire right, title, and interest in and to all Work Product and Intellectual Property Rights therein, including the right to sue, counterclaim, and recover for all past, present, and future infringement, misappropriation, or dilution thereof, and all rights corresponding thereto throughout the world. Nothing contained in this Agreement shall be construed to reduce or limit the Employer's rights, title, or interest in any Work Product or Intellectual Property Rights so as to be less in any respect than that the Employer would have had in the absence of this Agreement.

(c)     Further Assurances; Power of Attorney. During and after the Employee's employment, the Employee agrees to reasonably cooperate with the Employer:  (i) to apply for, obtain, perfect, and transfer to the Employer the Work Product and Intellectual Property Rights in the Work Product in any jurisdiction in the world; and (ii) to maintain, protect, and enforce the same, including without limitation by executing and delivering to the Employer any and all applications, oaths, declarations, affidavits, waivers, assignments, and other documents and instruments as shall be requested by the Employer. The Employee hereby irrevocably grants the Employer power of attorney to execute and deliver any such documents on the Employee's behalf in the Employee's name, and to do all other lawfully permitted acts to transfer the Work Product to the Employer and further the transfer, issuance, prosecution, and maintenance of all Intellectual Property Rights therein, to the full extent permitted by law, if the Employee does not promptly cooperate with the Employer's request (without limiting the rights the Employer shall have in such circumstances by operation of law). The power of attorney is coupled with an interest and shall not be affected or limited by the Employee's subsequent incapacity.

(d)     Moral Rights. To the extent any copyrights are assigned under this Agreement, the Employee hereby irrevocably waives, to the extent permitted by applicable law, any and all claims the Employee may now or hereafter have in any jurisdiction to all rights of paternity, integrity, disclosure, and withdrawal and any other rights that may be known as "moral rights" with respect to all Work Product and all Intellectual Property Rights therein.

(e)     No License. The Employee understands that this Agreement does not grant, and shall not be construed to grant, the Employee any license or right of any nature with respect to any Work Product or Intellectual Property Rights or any Confidential Information, materials, software, or other tools made available to the Employee by the Employer.

4.     Security.

(a)     Security and Access. The Employee agrees and covenants:  (i) to comply with all Employer security policies and procedures as are in force from time to time, including without limitation those regarding computer equipment, telephone systems, voicemail systems, facilities access, monitoring, key cards, access codes, Employer Group intranet, internet, social media and instant messaging systems, computer systems, e-mail systems, computer networks, document storage systems, software, data security, encryption, firewalls, passwords, and any and all other Employer Group facilities, information technology resources, and communication technologies (collectively, "**Facilities and IT Resources**"); (ii) not to access or use any Facilities and IT Resources except as authorized by Employer; and (iii) not to access or use any Facilities and IT Resources in any manner after the termination of the Employee's employment by the Employer, whether termination is voluntary or involuntary. The Employee agrees to notify the Employer promptly in the event the Employee learns of any violation of the foregoing by others, or of any other misappropriation or unauthorized access, use, reproduction, or reverse engineering of, or tampering with any Facilities and IT Resources or other Employer Group property or materials by others.

(b)     Exit Obligations. Upon (i) voluntary or involuntary termination of the Employee's employment or (ii) the Employer's request at any time during the Employee's employment, the Employee shall:  (a) provide or return to the Employer any and all Employer Group property, including without limitation keys, key cards, access cards, identification cards, security devices, employer credit cards, network access devices, computers, cell phones, smartphones, PDAs, pagers, fax machines, equipment, speakers, webcams, manuals, reports, files, books, compilations, work product, e-mail messages, recordings, tapes, disks, thumb drives or other removable information storage devices, hard drives, data, and all Employer Group documents and materials belonging to the Employer and stored in any fashion, including but not limited to those that constitute or contain any Confidential Information or Work Product, that are in the possession or control of the Employee, whether they were provided to the Employee by the Employer Group or any of its business partners or associates or created by the Employee in connection with the Employee's employment by the Employer; and (b) delete or destroy all copies of any such documents and materials not returned to the Employer that remain in the Employee's possession or control, including those stored on any non-Employer Group devices, networks, storage locations, and media in the Employee's possession or control.

5.     Publicity. Employee hereby consents to any and all uses and displays, by the Employer Group and its agents, of the Employee's name, voice, likeness, image, appearance, and biographical information in, on, or in connection with any pictures, photographs, audio and video recordings, digital images, websites, television programs and advertising, other advertising, sales, and marketing brochures, books, magazines, other publications, CDs, DVDs, tapes, and all other printed and

electronic forms and media throughout the world, at any time during or after the period of the Employee's employment by the Employer, for all legitimate business purposes of the Employer Group (each, a **Permitted Use**"). Employee hereby forever releases the Employer Group and its directors, officers, employees, representatives, and agents from any and all claims, actions, damages, losses, costs, expenses, and liability of any kind, arising under any legal or equitable theory whatsoever at any time during or after the period of the Employee's employment by the Employer, in connection with any Permitted Use.

6.     Non-Disparagement. The Employee agrees and covenants that the Employee will not at any time make, publish, or communicate to any person or entity or in any public forum any defamatory or disparaging remarks, comments, or statements concerning the Employer Group or its businesses, or any of its employees, officers, and existing and prospective clients, providers, contractors, vendors, suppliers, investors, and other associated third parties. This Section does not restrict or impede, and shall not be construed in any way so as to restrict or impede, the Employee from exercising the Employee's protected rights to the extent that such rights cannot be waived by agreement, or from complying with any applicable law, regulation, or valid order of a court of competent jurisdiction or an authorized government agency, provided that such compliance does not exceed that required by the law, regulation, or order. The Employee shall promptly provide written notice of any such order to an authorized officer of the Employer within twenty-four (24) hours of receiving such order, but in any event sufficiently in advance of making any disclosure to permit the Employer to contest the order or to seek confidentiality protections, as determined in the Employer's sole discretion.

7.     Acknowledgment. The Employee acknowledges and agrees that the services to be rendered by the Employee to the Employer are of a special and unique character; that the Employee will obtain knowledge and skill relevant to the Employer's industry, methods of doing business, and marketing strategies by virtue of the Employee's employment; and that the terms and conditions of this Agreement are reasonable under these circumstances. The Employee further acknowledges that the amount of the Employee's compensation reflects, in part, the Employee's obligations and the Employer's rights under this Agreement; that the Employee has no expectation of any additional compensation, royalties, or other payment of any kind not otherwise referenced herein in connection herewith; that the Employee will not be subject to undue hardship by reason of the Employee's full compliance with the terms and conditions of this Agreement or the Employer's enforcement thereof; and that this Agreement is not a contract of employment and shall not be construed as a commitment by either of the Parties to continue an employment relationship for any certain period of time. **Nothing in this Agreement shall be construed to in any way terminate, supersede, undermine, or otherwise modify the at-will status of the employment relationship between the Employer and the Employee, pursuant to which either the Employer or the Employee may terminate the employment relationship at any time, with or without cause, and with or without notice.**

8.     Remedies. The Employee acknowledges that the Employer's Confidential Information and the Employer's ability to reserve it for the exclusive knowledge and use of the Employer is of great competitive importance and commercial value to the Employer, and that improper use or disclosure of the Confidential Information by the Employee will cause irreparable harm to the Employer Group, for which remedies at law would not be adequate. In the event of any breach or threatened breach by

DocuSign Envelope ID: F840D95B-5B60-4524-95BC-8A0D1856C641

the Employee of any of the provisions of this Agreement, the Employee hereby consents and agrees that the Employer shall be entitled, in addition to other available remedies, to a temporary or permanent injunction or other equitable relief against such breach or threatened breach from any court of competent jurisdiction, without the necessity of showing any actual damages or that monetary damages would not afford an adequate remedy, and without the necessity of posting any bond or other security. The aforementioned equitable relief shall be in addition to, not in lieu of, legal remedies, monetary damages, or other available forms of relief. The Employee further acknowledges that each member of the Employer Group is an intended third-party beneficiary of this Agreement.

9.     <u>Successors and Assigns</u>.

      (a)     <u>Assignment by the Employer</u>. The Employer may assign this Agreement to any subsidiary or corporate affiliate in the Employer Group or otherwise, or to any successor or assign (whether direct or indirect, by purchase, merger, consolidation, or otherwise) to all or substantially all of the business or assets of the Employer. This Agreement shall inure to the benefit of the Employer Group and permitted successors and assigns.

      (b)     <u>No Assignment by the Employee</u>. The Employee may not assign this Agreement or any part hereof. Any purported assignment by the Employee shall be null and void from the initial date of purported assignment.

10.     <u>Governing Law; Jurisdiction and Venue</u>. This Agreement, for all purposes, shall be construed in accordance with the laws of Massachusetts without regard to conflicts-of-law principles. Any action or proceeding by either Party to enforce this Agreement shall be brought only in any state or federal court located in the Commonwealth of Massachusetts, county of Suffolk. The Parties hereby irrevocably submit to the exclusive jurisdiction of such courts and waive the defense of inconvenient forum to the maintenance of any such action or proceeding in such venue.

11.     <u>Notice of Immunity</u>.  In accordance with the Defend Trade Secrets Act of 2016, Employee is hereby provided notice that individuals shall not be held criminally or civilly liable under any federal or state trade secret law for the disclosure of a trade secret that is made:  (a) (i) in confidence to a federal, state, or local government official, either directly or indirectly, or to an attorney; and (ii) solely for the purpose of reporting or investigating a suspected violation of law; or (b) is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal. An individual who files a lawsuit for retaliation by an employer for reporting a suspected violation of law may disclose the trade secret to the attorney of the individual and use the trade secret information in the court proceeding, if the individual (c) files any document containing the trade secret under seal; and (d) does not disclose the trade secret, except pursuant to court order.

12.     <u>Entire Agreement</u>. Unless specifically provided herein, this Agreement contains all the understandings and representations between the Employee and the Employer pertaining to the subject matter hereof and supersedes all prior and contemporaneous understandings, agreements, representations, and warranties, both written and oral, with respect to such subject matter.

13.    <u>Modification and Waiver</u>. No provision of this Agreement may be amended or modified unless such amendment or modification is agreed to in writing and signed by the Employee and by a duly authorized officer of the Employer. No waiver by either of the Parties of any breach by the other party hereto of any condition or provision of this Agreement to be performed by the other party hereto shall be deemed a waiver of any similar or dissimilar provision or condition at the same or any prior or subsequent time, nor shall the failure of or delay by either of the Parties in exercising any right, power, or privilege hereunder operate as a waiver thereof to preclude any other or further exercise thereof or the exercise of any other such right, power, or privilege.

14.    <u>Severability</u>. Should any provision of this Agreement be held by a court of competent jurisdiction to be enforceable only if modified, or if any portion of this Agreement shall be held as unenforceable and thus stricken, such holding shall not affect the validity of the remainder of this Agreement, the balance of which shall continue to be binding upon the Parties with any such modification to become a part hereof and treated as though originally set forth in this Agreement. The Parties further agree that any such court is expressly authorized to modify any such unenforceable provision of this Agreement in lieu of severing such unenforceable provision from this Agreement in its entirety, whether by rewriting the offending provision, deleting any or all of the offending provision, adding additional language to this Agreement, or making such other modifications as it deems warranted to carry out the intent and agreement of the Parties as embodied herein to the maximum extent permitted by law. The Parties expressly agree that this Agreement as so modified by the court shall be binding upon and enforceable against each of them. In any event, should one or more of the provisions of this Agreement be held to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provisions hereof, and if such provision or provisions are not modified as provided above, this Agreement shall be construed as if such invalid, illegal, or unenforceable provisions had not been set forth herein.

15.    <u>Captions</u>. Captions and headings of the sections and paragraphs of this Agreement are intended solely for convenience and no provision of this Agreement is to be construed by reference to the caption or heading of any section or paragraph.

16.    <u>Tolling</u>. Should the Employee violate any of the Employee's obligations articulated herein, the obligation at issue will run from the first date on which the Employee ceases to be in violation of such obligation.

17.    <u>Counterparts</u>. This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which taken together shall constitute one and the same instrument.  A signed copy of this Agreement delivered by facsimile, email or other means of electronic transmission shall be deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

*[Signatures Follow.]*

**IN WITNESS WHEREOF**, the Parties have executed and entered into this Agreement as of the Effective Date above.

EMPLOYEE:

Signature: _Jamie Trainor_
DocuSigned by:
C8A1B6504DA040A...

Print Name: Jamie Trainor

Date: 10/24/2016

Title: Team Lead

BARTON & ASSOCIATES, INC.:

Signature: _Gilbert Wieboldt_
DocuSigned by:
ABB870C20BA6424...

Print Name: Gilbert Wieboldt

Date: 10/24/2016

Title: Supervisor, HR Generalist

## EXHIBIT B

# Barton Associates

CONFIDENTIALITY, RESTRICTIVE COVENANTS,
AND PROPRIETARY RIGHTS AGREEMENT

This Confidentiality, Restrictive Covenants, and Proprietary Rights Agreement ("**Agreement**") is entered into by and between Barton & Associates, Inc., a Delaware corporation having its principal place of business at 300 Jubilee Drive, Peabody, MA 01960 (the "**Employer**") on behalf of itself, its subsidiaries, and other corporate affiliates (collectively referred to herein as the "**Employer Group**"), ___Andre Godbout___ (the "**Employee**", and together with Employer, the "**Parties**") as of ___12/29/2017___ (the "**Effective Date**").

In consideration of the Employee's at-will employment by the Employer and the Employee's access to and knowledge of Employer's Confidential Information (as defined below), which the Employee acknowledges to be good and valuable consideration for Employee's obligations hereunder, the Employer and Employee hereby agree as follows:

1.      Confidentiality and Security.

(a)      Confidential Information. The Employee understands and acknowledges that, during the course of employment by the Employer, Employee will have access to and learn about confidential, secret, and proprietary documents, materials, data, and other information, in tangible and intangible form, of and relating to the Employer Group and its businesses and existing Clients (as defined below), Prospective Clients (as defined below), Providers (as defined below), vendors, suppliers, investors, and other associated third parties ("**Confidential Information**"). The Employee further understands, acknowledges, and agrees that the Confidential Information and the Employer's ability to reserve it for the exclusive knowledge and use of the Employer Group is of great competitive importance and commercial value to the Employer, and that improper use or disclosure of the Confidential Information by the Employee will cause irreparable harm to the Employer Group, for which remedies at law will not be adequate and may also cause the Employer to incur significant financial costs and loss of business advantages.

Confidential Information includes but is not limited to all information that is proprietary, sensitive, secret, or not generally known to the public, in spoken, printed, electronic, or any other form or medium, relating directly or indirectly to:  business processes, practices, methods, policies, plans, publications, documents, research, operations, services, strategies, techniques, agreements, contracts, terms of agreements, transactions, potential transactions, negotiations, pending negotiations, know-how, trade secrets, computer programs, computer software, applications, operating systems, software design, web design, work-in-process, databases and database information (including without limitation customer lists, Client lists, Provider lists, contractor lists, and all associated and related information and documentation), manuals, records, articles, systems, material, sources of material, financial information, accounting information, accounting records, legal information, marketing information, advertising information, pricing information, credit information, design information, payroll information, staffing information, personnel information, employee lists, supplier lists and information, vendor lists and information, developments, reports, internal controls, security procedures, graphics, drawings, sketches, market studies, sales information, revenue, profits and losses, debts, costs, notes, communications, algorithms, product

plans, designs, styles, models, ideas, audiovisual programs, inventions, unpublished patent applications, original works of authorship, discoveries, experimental processes, experimental results, and specifications of the Employer Group or its businesses or any existing Clients or Prospective Clients, Providers, contractors, or investors and other associated third parties, or of any other person or entity that has entrusted information to the Employer in confidence.

The Employee understands that the above list is not exhaustive, and that Confidential Information also includes other information that is marked or otherwise identified as confidential or proprietary, or that would otherwise appear to a reasonable person to be confidential or proprietary in the context and circumstances in which the information is known or used.

The Employee understands and agrees that any Confidential Information developed by the Employee in the course of the Employee's employment by the Employer shall be subject to the terms and conditions of this Agreement as if the Employer furnished the same Confidential Information to the Employee in the first instance. Confidential Information shall not include information that is generally available to and known by the public, provided that such disclosure to the public is through no direct or indirect fault of the Employee or person(s) acting on the Employee's behalf.

(b)      Certain Definitions.

The term "**Client(s)**" shall mean any natural person, firm, company, limited liability company, professional limited liability company, corporation, professional corporation, non-profit corporation, partnership, limited partnership, limited liability partnership, organization, association, professional association, hospital, clinic, office, medical practice or facility, dental practice or facility, nursing practice or facility, federal, state, or local government agency, or other individual or entity (each of the foregoing, a "**Person**") for whom or which, or on whose behalf, the Employer Group provides or provided goods or services during or prior to Employee's employment by the Employer, regardless of whether Employee induced, solicited, or communicated with such Client.

The term "**Prospective Client(s)**" shall mean any Person with whom or which negotiations or discussions occurred during the course of Employee's employment by the Employer concerning the provision by the Employer Group of goods or services to such Person, regardless of whether Employee solicited or induced, or attempted to solicit or induce, such Person to give its patronage or business to the Employer Group, communicated or attempted to communicate with such Person, or participated in any negotiations or discussions with such Person.

The term "**Provider(s)**" shall mean any physician, nurse practitioner, dentist, psychiatrist, psychologist, physician assistant, optometrist, pharmacist, certified registered nurse anesthetist, or dermatologist with whom or which discussions or negotiations occurred, or with whom or which any contract or agreement was entered into, negotiated, attempted to be entered into or negotiated, or signed, or whose name or other demographic, identifying, or contact information was or becomes included in the Employer Group's database(s).  The term "**Provider(s)**" shall also include any firm, company, limited liability company, professional limited liability company, corporation, professional corporation, non-profit corporation, partnership, limited partnership, limited liability partnership, organization, association, or professional association that is directly or indirectly owned or otherwise controlled by or through any Provider.

(c)    Disclosure and Use Restrictions. The Employee agrees and covenants: (i) to treat all Confidential Information as strictly confidential; (ii) not to directly or indirectly disclose, publish, communicate, or make available Confidential Information, or allow it to be disclosed, published, communicated, or made available, in whole or part, to any third party not having a need to know and authority to know and use the Confidential Information in connection with the business of the Employer Group and, in any event, not to anyone outside of the direct employ of the Employer Group except as required in the performance of the Employee's authorized employment duties to the Employer or with the prior written consent of an authorized officer acting on behalf of the Employer in each instance (and then, such disclosure shall be made only within the limits and to the extent of such duties or consent); and (iii) not to access or use any Confidential Information, not to copy any documents, records, files, media, or other resources containing any Confidential Information, and not to remove any such documents, records, files, media, or other resources from the premises or control of the Employer, except as required in the performance of the Employee's authorized employment duties to the Employer or with the prior written consent of an authorized officer acting on behalf of the Employer in each instance (and then, such disclosure shall be made only within the limits and to the extent of such duties or consent). Nothing herein shall be construed to prevent disclosure of Confidential Information as may be required by applicable law or regulation, or pursuant to the valid order of a court of competent jurisdiction or an authorized government agency, provided that the disclosure does not exceed the extent of disclosure required by such law, regulation, or order. The Employee shall provide written notice of any such order to an authorized officer of the Employer within twenty-four (24) hours of receiving such order, but in any event sufficiently in advance of making any disclosure to permit the Employer to contest the order or to seek confidentiality protections, as determined in the Employer's sole discretion. In addition, this Section does not in any way restrict or impede the Employee from exercising Employee's rights under Section 7 of the National Labor Relations Act, or from otherwise disclosing information as permitted by law.

(d)    Duration of Confidentiality Obligations. The Employee understands and acknowledges that Employee's obligations under this Agreement with regard to any particular Confidential Information shall commence immediately upon the Employee first having access to such Confidential Information (whether before or after Employee begins employment by the Employer) and shall continue during and after Employee's employment by the Employer until such time as such Confidential Information has become public knowledge other than as a result of the Employee's breach of this Agreement or breach by those acting in concert with the Employee or on the Employee's behalf.

2.    Restrictive Covenants.

(a)    Non-Competition.

Because of Employer Group's legitimate business interest as described herein and the good and valuable consideration offered to the Employee, during the term of Employee's employment and for one (1) year following termination of Employee's employment by the Employer, for any reason or no reason and whether employment is terminated at the option of the Employee or the Employer (the "**Restricted Period**"), the Employee agrees and covenants not to engage in any Prohibited Activity within the United States.

3

For purposes of this non-compete clause, "**Prohibited Activity**" is any activity in which the Employee directly or indirectly contributes the Employee's knowledge, in whole or in part, as an employee, employer, owner, operator, manager, advisor, consultant, agent, partner, director, stockholder, officer, volunteer, intern, or any other similar capacity to an entity engaged in the same or similar business as the Employer Group, including those engaged in the business of: (i) seeking, locating, and recruiting for temporary locum tenens assignment openings or contract openings or assignments for Providers; (ii) placing, attempting to place, and coordinating the placement of Providers at such openings or any other temporary or permanent medical staffing opportunities in the United States and its territories and possessions; (iii) seeking, locating, and recruiting Providers; (iv) building, operating, and maintaining online social networking communities connecting medical professionals; (v) providing services and software connecting patients and medical professionals remotely and digitally through the use of telecommunications, audiovisual platforms, software applications, and other information technologies; and (vi) all other goods and services the Employer Group may offer during Employee's employment by the Employer. Prohibited Activity also includes any activity that may require or will inevitably require disclosure of any trade secret, proprietary information, or Confidential Information of the Employer Group.

Nothing herein shall prohibit Employee from purchasing or owning less than five percent (5%) of the publicly traded securities of any corporation, provided that such ownership represents a passive investment and that the Employee is not a controlling person of, or a member of a group that controls, such corporation.

This Section does not in any way restrict or impede the Employee from exercising protected rights to the extent that such rights cannot be waived by agreement or from complying with any applicable law, regulation, or valid order of a court of competent jurisdiction or an authorized government agency, provided that such compliance does not exceed that required by the law, regulation, or order. The Employee shall promptly provide written notice of any such order to the Employer's President.

(b)     Non-Solicitation of Employees.

The Employee agrees and covenants not to directly or indirectly solicit, hire, recruit, attempt to hire or recruit, or induce the termination of employment of any employee of the Employer Group during the Restricted Period.

(c)     Non-Solicitation of Clients and Providers.

The Employee understands and acknowledges that, because of the Employee's experience with and relationship to the Employer, the Employee will have access to and learn about much or all of the Employer Group's Client Information (as defined below) and Provider Information (as defined below).

The Employee understands and acknowledges that loss of this Client relationship and/or goodwill will cause significant and irreparable harm to the Employer Group.

The Employee agrees and covenants, during the Restricted Period, not to directly or indirectly solicit, contact (including without limitation by e-mail, regular mail, express mail, telephone, text message, fax, and instant message), attempt to contact, or meet with any of the

4

Employer Group's Clients or Prospective Clients for purposes of offering or accepting goods or services similar to or competitive with those offered by the Employer Group.

For purposes of this Agreement, "**Client Information**" shall mean any information of or relating to any Client or Prospective Client of the Employer Group, which shall include but not be limited to names, phone numbers, addresses, e-mail addresses, demographic information, professional information, references, referrals, order history, order preferences, negotiating and business tendencies and tactics, staffing needs, staffing preferences and tendencies, chain of command, pricing information, contract terms and conditions, margins (of either Employer Group, Client, or Prospective Client), and other information, identifying facts, and circumstances specific to any Client or Prospective Client and relevant to the Employer Group's current or potential sales, products, services, or businesses.

For purposes of this Agreement, "**Provider Information**" shall mean any information of or relating to any Provider, which shall include but not be limited to names, phone numbers, addresses, e-mail addresses, demographic information, professional information, previous experience, education, references, referrals, employment history, placement or assignment preferences, geographic preferences, Client preferences, negotiating and business tendencies and tactics, placement or assignment needs, pricing or rate information, contract terms and conditions, margins (of either Employer Group or Provider), and other information, identifying facts, and circumstances specific to any Provider and relevant to the Employer Group's current or potential sales, products, services, or businesses.

3.    Proprietary Rights.

(a)    Work Product. The Employee acknowledges and agrees that all writings, works of authorship, technology, inventions, discoveries, ideas, and other work product of any nature whatsoever, that are created, prepared, produced, authored, edited, amended, conceived, or reduced to practice by the Employee individually or jointly with others during the period of Employee's employment by the Employer and relating in any way to the business or contemplated business, research, or development of the Employer Group (regardless of when or where the Work Product is prepared or whose equipment or other resources is used in preparing the same) and all printed, physical, and electronic copies, all improvements, rights, and claims related to the foregoing, and other tangible embodiments thereof (collectively, "**Work Product**"), as well as any and all rights in and to copyrights, trade secrets (including without limitation all databases and information contained therein), trademarks (and related goodwill), patents, and other intellectual property rights therein arising in any jurisdiction throughout the world and all related rights of priority under international conventions with respect thereto, including all pending and future applications and registrations therefor, and continuations, divisions, continuations-in-part, reissues, extensions, and renewals thereof (collectively, "**Intellectual Property Rights**"), shall be the sole and exclusive property of the Employer.

For purposes of this Agreement, Work Product includes, but is not limited to, Employer Group information, including plans, publications, research, strategies, techniques, agreements, documents, contracts, terms of agreements, negotiations, know-how, computer programs, computer applications, software design, web design, work in process, databases and

database contents and information, manuals, results, developments, reports, graphics, drawings, sketches, market studies, notes, communications, algorithms, product plans, product designs, styles, models, audiovisual programs, inventions, unpublished patent applications,  original works of authorship, discoveries, experimental processes, experimental results, specifications, customer information, Client information and lists, Prospective Client information and lists, Provider information and lists, customer information and lists, marketing information, technology information, advertising information, training instructions and information (including training presentations and materials), and sales information.

   (b) <u>Work Made for Hire; Assignment</u>. The Employee acknowledges that, by reason of being employed by the Employer at the relevant times, to the extent permitted by law, all of the Work Product consisting of copyrightable subject matter is "work made for hire" as defined in the Copyright Act of 1976 (17 U.S.C. § 101), and such copyrights are therefore owned by the Employer. To the extent that the foregoing does not apply, the Employee hereby irrevocably assigns to the Employer, for no additional consideration, the Employee's entire right, title, and interest in and to all Work Product and Intellectual Property Rights therein, including the right to sue, counterclaim, and recover for all past, present, and future infringement, misappropriation, or dilution thereof, and all rights corresponding thereto throughout the world. Nothing contained in this Agreement shall be construed to reduce or limit the Employer's rights, title, or interest in any Work Product or Intellectual Property Rights so as to be less in any respect than that the Employer would have had in the absence of this Agreement.

   (c) <u>Further Assurances; Power of Attorney</u>. During and after the Employee's employment, the Employee agrees to reasonably cooperate with the Employer: (i) to apply for, obtain, perfect, and transfer to the Employer the Work Product and Intellectual Property Rights in the Work Product in any jurisdiction in the world; and (ii) to maintain, protect, and enforce the same, including without limitation by executing and delivering to the Employer any and all applications, oaths, declarations, affidavits, waivers, assignments, and other documents and instruments as shall be requested by the Employer. The Employee hereby irrevocably grants the Employer power of attorney to execute and deliver any such documents on the Employee's behalf in the Employee's name, and to do all other lawfully permitted acts to transfer the Work Product to the Employer and further the transfer, issuance, prosecution, and maintenance of all Intellectual Property Rights therein, to the full extent permitted by law, if the Employee does not promptly cooperate with the Employer's request (without limiting the rights the Employer shall have in such circumstances by operation of law). The power of attorney is coupled with an interest and shall not be affected or limited by the Employee's subsequent incapacity.

   (d) <u>Moral Rights</u>. To the extent any copyrights are assigned under this Agreement, the Employee hereby irrevocably waives, to the extent permitted by applicable law, any and all claims the Employee may now or hereafter have in any jurisdiction to all rights of paternity, integrity, disclosure, and withdrawal and any other rights that may be known as "moral rights" with respect to all Work Product and all Intellectual Property Rights therein.

(e)     No License. The Employee understands that this Agreement does not grant, and shall not be construed to grant, the Employee any license or right of any nature with respect to any Work Product or Intellectual Property Rights or any Confidential Information, materials, software, or other tools made available to the Employee by the Employer.

4.     Security.

(a)     Security and Access. The Employee agrees and covenants:  (i) to comply with all Employer security policies and procedures as are in force from time to time, including without limitation those regarding computer equipment, telephone systems, voicemail systems, facilities access, monitoring, key cards, access codes, Employer Group intranet, internet, social media and instant messaging systems, computer systems, e-mail systems, computer networks, document storage systems, software, data security, encryption, firewalls, passwords, and any and all other Employer Group facilities, information technology resources, and communication technologies (collectively, "**Facilities and IT Resources**"); (ii) not to access or use any Facilities and IT Resources except as authorized by Employer; and (iii) not to access or use any Facilities and IT Resources in any manner after the termination of the Employee's employment by the Employer, whether termination is voluntary or involuntary. The Employee agrees to notify the Employer promptly in the event the Employee learns of any violation of the foregoing by others, or of any other misappropriation or unauthorized access, use, reproduction, or reverse engineering of, or tampering with any Facilities and IT Resources or other Employer Group property or materials by others.

(b)     Exit Obligations. Upon (i) voluntary or involuntary termination of the Employee's employment or (ii) the Employer's request at any time during the Employee's employment, the Employee shall:  (a) provide or return to the Employer any and all Employer Group property, including without limitation keys, key cards, access cards, identification cards, security devices, employer credit cards, network access devices, computers, cell phones, smartphones, PDAs, pagers, fax machines, equipment, speakers, webcams, manuals, reports, files, books, compilations, work product, e-mail messages, recordings, tapes, disks, thumb drives or other removable information storage devices, hard drives, data, and all Employer Group documents and materials belonging to the Employer and stored in any fashion, including but not limited to those that constitute or contain any Confidential Information or Work Product, that are in the possession or control of the Employee, whether they were provided to the Employee by the Employer Group or any of its business partners or associates or created by the Employee in connection with the Employee's employment by the Employer; and (b) delete or destroy all copies of any such documents and materials not returned to the Employer that remain in the Employee's possession or control, including those stored on any non-Employer Group devices, networks, storage locations, and media in the Employee's possession or control.

5.     Publicity. Employee hereby consents to any and all uses and displays, by the Employer Group and its agents, of the Employee's name, voice, likeness, image, appearance, and biographical information in, on, or in connection with any pictures, photographs, audio and video recordings, digital images, websites, television programs and advertising, other advertising, sales, and marketing brochures, books, magazines, other publications, CDs, DVDs, tapes, and all other printed and

7

electronic forms and media throughout the world, at any time during or after the period of the Employee's employment by the Employer, for all legitimate business purposes of the Employer Group (each, a "**Permitted Use**"). Employee hereby forever releases the Employer Group and its directors, officers, employees, representatives, and agents from any and all claims, actions, damages, losses, costs, expenses, and liability of any kind, arising under any legal or equitable theory whatsoever at any time during or after the period of the Employee's employment by the Employer, in connection with any Permitted Use.

6.      Non-Disparagement. The Employee agrees and covenants that the Employee will not at any time make, publish, or communicate to any person or entity or in any public forum any defamatory or disparaging remarks, comments, or statements concerning the Employer Group or its businesses, or any of its employees, officers, and existing and prospective clients, providers, contractors, vendors, suppliers, investors, and other associated third parties. This Section does not restrict or impede, and shall not be construed in any way so as to restrict or impede, the Employee from exercising the Employee's protected rights to the extent that such rights cannot be waived by agreement, or from complying with any applicable law, regulation, or valid order of a court of competent jurisdiction or an authorized government agency, provided that such compliance does not exceed that required by the law, regulation, or order. The Employee shall promptly provide written notice of any such order to an authorized officer of the Employer within twenty-four (24) hours of receiving such order, but in any event sufficiently in advance of making any disclosure to permit the Employer to contest the order or to seek confidentiality protections, as determined in the Employer's sole discretion.

7.      Acknowledgment. The Employee acknowledges and agrees that the services to be rendered by the Employee to the Employer are of a special and unique character; that the Employee will obtain knowledge and skill relevant to the Employer's industry, methods of doing business, and marketing strategies by virtue of the Employee's employment; and that the terms and conditions of this Agreement are reasonable under these circumstances. The Employee further acknowledges that the amount of the Employee's compensation reflects, in part, the Employee's obligations and the Employer's rights under this Agreement; that the Employee has no expectation of any additional compensation, royalties, or other payment of any kind not otherwise referenced herein in connection herewith; that the Employee will not be subject to undue hardship by reason of the Employee's full compliance with the terms and conditions of this Agreement or the Employer's enforcement thereof; and that this Agreement is not a contract of employment and shall not be construed as a commitment by either of the Parties to continue an employment relationship for any certain period of time. **Nothing in this Agreement shall be construed to in any way terminate, supersede, undermine, or otherwise modify the at-will status of the employment relationship between the Employer and the Employee, pursuant to which either the Employer or the Employee may terminate the employment relationship at any time, with or without cause, and with or without notice.**

8.      Remedies. The Employee acknowledges that the Employer's Confidential Information and the Employer's ability to reserve it for the exclusive knowledge and use of the Employer is of great competitive importance and commercial value to the Employer, and that improper use or disclosure of the Confidential Information by the Employee will cause irreparable harm to the Employer Group,

for which remedies at law would not be adequate. In the event of any breach or threatened breach by the Employee of any of the provisions of this Agreement, the Employee hereby consents and agrees that the Employer shall be entitled, in addition to other available remedies, to a temporary or permanent injunction or other equitable relief against such breach or threatened breach from any court of competent jurisdiction, without the necessity of showing any actual damages or that monetary damages would not afford an adequate remedy, and without the necessity of posting any bond or other security. The aforementioned equitable relief shall be in addition to, not in lieu of, legal remedies, monetary damages, or other available forms of relief. The Employee further acknowledges that each member of the Employer Group is an intended third-party beneficiary of this Agreement.

9.    Successors and Assigns.

(a)    Assignment by the Employer. The Employer may assign this Agreement to any subsidiary or corporate affiliate in the Employer Group or otherwise, or to any successor or assign (whether direct or indirect, by purchase, merger, consolidation, or otherwise) to all or substantially all of the business or assets of the Employer. This Agreement shall inure to the benefit of the Employer Group and permitted successors and assigns.

(b)    No Assignment by the Employee. The Employee may not assign this Agreement or any part hereof. Any purported assignment by the Employee shall be null and void from the initial date of purported assignment.

10.    Governing Law; Jurisdiction and Venue. This Agreement, for all purposes, shall be construed in accordance with the laws of Massachusetts without regard to conflicts-of-law principles. Any action or proceeding by either Party to enforce this Agreement shall be brought only in any state or federal court located in the Commonwealth of Massachusetts, county of Suffolk. The Parties hereby irrevocably submit to the exclusive jurisdiction of such courts and waive the defense of inconvenient forum to the maintenance of any such action or proceeding in such venue.

11.    Notice of Immunity.  In accordance with the Defend Trade Secrets Act of 2016, Employee is hereby provided notice that individuals shall not be held criminally or civilly liable under any federal or state trade secret law for the disclosure of a trade secret that is made:  (a) (i) in confidence to a federal, state, or local government official, either directly or indirectly, or to an attorney; and (ii) solely for the purpose of reporting or investigating a suspected violation of law; or (b) is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal. An individual who files a lawsuit for retaliation by an employer for reporting a suspected violation of law may disclose the trade secret to the attorney of the individual and use the trade secret information in the court proceeding, if the individual (c) files any document containing the trade secret under seal; and (d) does not disclose the trade secret, except pursuant to court order.

12.    Entire Agreement. Unless specifically provided herein, this Agreement contains all the understandings and representations between the Employee and the Employer pertaining to the subject matter hereof and supersedes all prior and contemporaneous understandings, agreements, representations, and warranties, both written and oral, with respect to such subject matter.

13.     Modification and Waiver. No provision of this Agreement may be amended or modified unless such amendment or modification is agreed to in writing and signed by the Employee and by a duly authorized officer of the Employer. No waiver by either of the Parties of any breach by the other party hereto of any condition or provision of this Agreement to be performed by the other party hereto shall be deemed a waiver of any similar or dissimilar provision or condition at the same or any prior or subsequent time, nor shall the failure of or delay by either of the Parties in exercising any right, power, or privilege hereunder operate as a waiver thereof to preclude any other or further exercise thereof or the exercise of any other such right, power, or privilege.

14.     Severability. Should any provision of this Agreement be held by a court of competent jurisdiction to be enforceable only if modified, or if any portion of this Agreement shall be held as unenforceable and thus stricken, such holding shall not affect the validity of the remainder of this Agreement, the balance of which shall continue to be binding upon the Parties with any such modification to become a part hereof and treated as though originally set forth in this Agreement. The Parties further agree that any such court is expressly authorized to modify any such unenforceable provision of this Agreement in lieu of severing such unenforceable provision from this Agreement in its entirety, whether by rewriting the offending provision, deleting any or all of the offending provision, adding additional language to this Agreement, or making such other modifications as it deems warranted to carry out the intent and agreement of the Parties as embodied herein to the maximum extent permitted by law. The Parties expressly agree that this Agreement as so modified by the court shall be binding upon and enforceable against each of them. In any event, should one or more of the provisions of this Agreement be held to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provisions hereof, and if such provision or provisions are not modified as provided above, this Agreement shall be construed as if such invalid, illegal, or unenforceable provisions had not been set forth herein.

15.     Captions. Captions and headings of the sections and paragraphs of this Agreement are intended solely for convenience and no provision of this Agreement is to be construed by reference to the caption or heading of any section or paragraph.

16.     Tolling. Should the Employee violate any of the Employee's obligations articulated herein, the obligation at issue will run from the first date on which the Employee ceases to be in violation of such obligation.

17.     Counterparts. This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which taken together shall constitute one and the same instrument.  A signed copy of this Agreement delivered by facsimile, email or other means of electronic transmission shall be deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

*[Signatures Follow.]*

10

**IN WITNESS WHEREOF**, the Parties have executed and entered into this Agreement as of the Effective Date above.

EMPLOYEE:

Signature: _Andre Godbout_
DocuSigned by:
84D60E2BE88E455

Print Name: Andre Godbout

Date: 12/29/2017

Title: Team Manager

BARTON & ASSOCIATES, INC.:

Signature: _____

Print Name: _Alexander M. Ashcroft_

Date: 12/29/17

Title: Manager, HR

[Signature Page to Confidentiality, Restrictive Covenants, and Proprietary Rights Agreement]

## EXHIBIT C

**Barton** Associates

## CONFIDENTIALITY, RESTRICTIVE COVENANTS, AND PROPRIETARY RIGHTS AGREEMENT

This Confidentiality, Restrictive Covenants, and Proprietary Rights Agreement ("**Agreement**"), dated and effective as of the date on which you commence employment with the Employer (defined below) (the "**Effective Date**"), is entered into by and between Barton & Associates, Inc., a Delaware corporation having its principal place of business at 300 Jubilee Drive, Peabody, MA 01960 (the "**Employer**"), on behalf of itself and its subsidiaries and affiliates (collectively referred to herein as the "**Employer Group**"), and ___Kendall Guaglianone_____ ("**you**", and together with Employer, the "**Parties**").

In consideration of your at-will employment by the Employer and your access to and knowledge of the Employer's Confidential Information (as defined below), which you acknowledge to be good and valuable consideration for your obligations hereunder, the Parties agree as follows:

1.      **Certain Definitions.**  In addition to those terms defined elsewhere in this Agreement, the following terms have the corresponding meanings:

(a)      "**Client(s)**" means any Person with whom you are aware that discussions or negotiations involving the Employer have occurred, or with whom you are aware that any contract or agreement was entered into, negotiated, or attempted to be entered into or negotiated with the Employer, or whose identity or other demographic, identifying, or contact information you are aware is or becomes included in the Employer Group's database(s), regardless of whether you solicit or communicate with such Client during your employment with the Employer.

(b)      "**Employer Group's Business**" means:  (i) recruiting Providers and Clients, which includes all activities related and ancillary to recruiting; (ii) staffing Clients, which includes all activities related and ancillary to staffing; (iii) developing, operating, and maintaining an online social networking community targeting clinical professionals; and (iv) providing all other goods and services the Employer Group may offer during your employment with the Employer.

(c)      "**Facilities & IT Resources**" means any and all computer equipment, telephone systems, voicemail systems, offices and other facilities, building and office access implements, monitoring devices and software, key cards, access codes, intranet, internet, social media, instant messaging systems and applications, email systems and applications, computer networks and systems, databases, document storage systems, software, data security technologies and measures, encryption technologies and measures, firewalls, user names, passwords, and other facilities, information technology resources, and communication technologies in each case that are owned, operated, leased, or licensed by the Employer or Employer Group.

(d)      "**Person**" means any natural person, firm, sole proprietor, company, limited liability company, professional limited liability company, corporation, professional corporation, services corporation, non-profit corporation or organization, joint venture, partnership, limited partnership, limited liability partnership, organization, association, professional association, hospital, clinic, office, medical

practice or facility, dental practice or facility, nursing practice or facility, federal, state, or local government agency, or any other form of entity or organization.

(e)     "**Prohibited Activity**" means any activity in which you, in any employment, ownership, controlling, joint-venture, agency, or other capacity, directly or indirectly compete with the Employer Group's Business, or aid, assist, or abet any other Person in directly or indirectly competing with the Employer Group's Business, in whole or in part.

(f)     "**Provider(s)**" means any physician, dentist, psychiatrist, psychologist, physician assistant, advanced practice registered nurse, nurse practitioner, certified registered nurse anesthetist, certified nursing specialist, certified nurse midwife, optometrist, veterinarian, or dermatologist with whom you are aware that discussions or negotiations have occurred, or with whom you are aware that any contract or agreement was entered into, negotiated, or attempted to be entered into or negotiated with the Employer, or whose name or other demographic, identifying, or contact information you are aware is or becomes included in the Employer Group's database(s), regardless of whether you solicit or communicate with such Provider during your employment with the Employer.  The term "**Provider(s)**" shall also include any Person that you are aware is employed or directly or indirectly owned or otherwise controlled by or through any Provider.

(g)     "**Restricted Period**" means during your employment with the Employer and one year following termination of such employment, whether your employment is terminated by you or the Employer.

2.     **Confidentiality and Security.**

(a)     Confidential Information. You understand and acknowledge that, during the course of your employment, you will have access to and learn about confidential, secret, and proprietary documents, materials, data, and other information, in both tangible and intangible form, of or relating to the Employer, Employer Group, Employer Group's Business, Clients, Providers, vendors, suppliers, investors, and other associated third parties (together, and as further described below, "**Confidential Information**"). You further understand, acknowledge, and agree that the Confidential Information and the Employer's ability to reserve it for the exclusive knowledge and use of the Employer Group is of great competitive importance and commercial value to the Employer, and that improper use or disclosure of Confidential Information by you will cause irreparable harm to the Employer and Employer Group for which remedies at law will not be adequate and may also cause the Employer to incur significant financial costs and loss of goodwill and business advantages.

Without limiting the generality of the foregoing, Confidential Information includes all information that is proprietary, sensitive, secret, or not generally known to the public, in spoken, printed, electronic, or any other form or medium, consisting of or relating directly or indirectly to any:  business or operational processes, practices, or methods; policies, plans, publications, documents, or research; strategies or techniques; agreements, terms of agreements, transactions, potential transactions, negotiations, or pending negotiations; intellectual property, including algorithms, ideas, product plans or designs, business styles or models, audiovisual programs, inventions, unpublished patent applications, original works of authorship, discoveries, experimental processes, experimental results, specifications,

2

know-how, works-in-process, or trade secrets (which includes Client lists, Provider lists, and all associated and related information and documentation, regardless of whether such lists or information is contained in the Employer's database(s)); computer programs, software, applications, operating systems, or web designs; materials or sources of materials; financial, accounting, pricing, or credit information; legal information; marketing or advertising information; supplier or vendor lists or information; internal controls or security procedures or protocols; and sales information, including training programs and materials, market studies and surveys, revenue, profits and losses, margins, debts, and costs.

You understand that the above list is not exhaustive, and that Confidential Information also includes other information that is marked or otherwise identified as confidential or proprietary, or that would otherwise appear to a reasonable person to be confidential or proprietary in the context and circumstances in which the information is known or used.

You understand and agree that any Confidential Information directly or indirectly developed, created, obtained, or derived by you in the course of your employment with the Employer shall be subject to the terms and conditions of this Agreement as if the Employer had furnished the same Confidential Information to you in the first instance. You further understand and agree that the form and manner in which Confidential Information is compiled is also considered Confidential Information. Confidential Information shall not include information that is generally available to and known by the public, provided that disclosure to the public is through no direct or indirect fault of you or any Person(s) acting on your behalf.

(b)     Disclosure and Use Restrictions. You agree and covenant:  (i) to treat all Confidential Information as strictly confidential; (ii) not to directly or indirectly disclose, publish, communicate, or make available Confidential Information, or allow it to be disclosed, published, communicated, or made available, in whole or part, to any third party who does not have a "need to know" and authority to know and use the Confidential Information in connection with the business of the Employer Group, except as required in the performance of your authorized employment duties to the Employer or with the prior written consent of an authorized officer acting on behalf of the Employer in each instance; (iii) not to access or use any Confidential Information, not to copy any documents, records, files, media, or other resources containing any Confidential Information, and not to remove any such documents, records, files, media, or other resources from the premises or control of the Employer, except as required in the performance of your authorized employment duties or with the prior written consent of an authorized officer acting on behalf of the Employer in each instance; and (iv) not to use or disclose any Confidential Information in any manner that would be or is detrimental to the Employer Group. Nothing herein shall be construed to prevent disclosure of Confidential Information as may be required by applicable law or regulation, or pursuant to the valid order of a court of competent jurisdiction or authorized government agency, provided that the disclosure does not exceed the extent of disclosure required by such law, regulation, or order. You shall provide written notice of any such order to an authorized officer of the Employer within 48 hours of receiving such order, but in any event sufficiently in advance of making any disclosure to permit the Employer to contest the order or to seek confidentiality protections, as determined in the Employer's sole discretion. For the sake of clarity, nothing in this Section or elsewhere in this Agreement shall in any way restrict or impede, or be construed to restrict or impede, you from exercising your rights under Section 7 of the National Labor Relations Act, or from otherwise disclosing information as permitted by law.

(c)   <u>Duration of Confidentiality Obligations</u>. You understand and acknowledge that your obligations under this Agreement with regard to any particular Confidential Information shall commence immediately upon you first having access to such Confidential Information (whether before or after you begin employment with the Employer) and shall continue during and after your employment until such time as the applicable Confidential Information has become public knowledge other than as a result of your direct or indirect violation of this Agreement.

3.   **Restrictive Covenants.**

(a)   <u>Non-Competition</u>.

Because of the Employer Group's legitimate business interests as described herein and the good and valuable consideration offered to you, during and throughout the Restricted Period you agree and covenant not to engage in any Prohibited Activity within the United States. The foregoing restrictions, however, shall not prohibit you from purchasing or owning less than five percent (5%) of the publicly traded securities of any corporation, <u>provided</u> that such ownership represents a passive investment and that you are not a controlling person of, or a member of a group that controls, such corporation.

This Section 3(a) shall apply to the maximum extent permitted by applicable law and shall not in any way restrict or impede you from exercising protected rights to the extent that such rights cannot be waived by agreement, or from complying with any applicable law, regulation, or valid order of a court of competent jurisdiction or authorized government agency, <u>provided</u> that such compliance does not exceed that required by such law, regulation, or order. You agree to provide prompt written notice of any such order to the Employer's Legal Department.

For the sake of clarity, this Section 3(a) shall not apply if your employment with the Employer is covered by Massachusetts General Laws, Chapter 149, Section 24L (i.e., if you are employed primarily in or are a resident of the Commonwealth of Massachusetts).

(b)   <u>Non-Solicitation of Employees</u>.

To the extent permitted by applicable law, during and throughout the Restricted Period you agree and covenant not to directly or indirectly solicit, hire, recruit, attempt to hire or recruit, or induce the termination of employment of any person who is an employee of the Employer Group.

(c)   <u>Non-Solicitation of Clients and Providers</u>.

You understand and acknowledge that, because of your experience with and relationship to the Employer, you will have access to and learn about some or all of the Employer Group's Client-related information and Provider-related information. You further understand and acknowledge that any partial or complete loss of any Client or Provider relationship and/or goodwill will cause significant and irreparable harm to the Employer Group.

Accordingly, to the extent permitted by applicable law, during and throughout the Restricted Period, you agree and covenant not to directly or indirectly solicit, contact (including without limitation by email, regular mail, express mail, telephone, text message, fax, instant message, and any form of social media), attempt to contact, or meet with any Client or Provider for purposes of offering or

4

accepting goods or services similar to or competitive with those offered by the Employer Group, including anything that would constitute a Prohibited Activity.

4.      **Proprietary Rights.**

(a)      Work Product. You acknowledge and agree that all Work Product (as defined below) and Intellectual Property Rights (as defined below) therein and resulting therefrom is and shall remain the sole and exclusive property of the Employer.  For purposes of this Agreement, "**Work Product**" means any and all writings, works of authorship, technology, inventions, discoveries, ideas, and other work products of any nature whatsoever that are created, prepared, produced, authored, edited, amended, developed, conceived, or reduced to practice by you, whether individually or jointly with others, during your employment with the Employer and relating in any way to the business or contemplated business, research, or development of the Employer Group (regardless of when or where the Work Product is prepared or whose equipment or other resources is used in preparing the same).  Work Product includes all printed, physical, and electronic copies thereof; all improvements, rights, and claims related thereto; and all other tangible embodiments thereof; as well as any and all rights in and to copyrights, trade secrets, trademarks (and related goodwill), patents, and other intellectual property rights therein arising in any jurisdiction throughout the world and all related rights of priority under international conventions with respect thereto, including all pending and future applications and registrations therefor, and all continuations, divisions, continuations-in-part, reissues, extensions, and renewals thereof (collectively, "**Intellectual Property Rights**").

Without limiting in any manner the foregoing or any other term or provision of this Agreement, Work Product also includes, but is not limited to, all Employer Group information, including plans, publications, research, strategies, techniques, agreements, documents, contracts, terms of agreements, negotiations, know-how, computer programs, computer applications, software design, web design, work in process, databases and database contents and information, manuals, results, developments, reports, graphics, drawings, sketches, market studies, notes, communications, algorithms, product or service plans, product designs, styles, models, audiovisual programs, inventions, unpublished patent applications,  original works of authorship, discoveries, experimental processes, experimental results, specifications, customer information, Client information and lists, Provider information and lists, marketing and advertising information, technology information, training instructions and information (including training presentations and materials), and sales information.

(b)      Work Made for Hire; Assignment. You acknowledge and agree that, by reason of being employed by the Employer at the relevant times, to the extent permitted by law all of the Work Product consisting of copyrightable material and subject matter is "work made for hire," as defined in the Copyright Act of 1976 (17 U.S.C. § 101), and that such copyrights are therefore owned by the Employer. To the extent the foregoing does not apply, you hereby irrevocably assign to the Employer, for no additional consideration, your entire right, title, and interest in and to all Work Product and Intellectual Property Rights therein, including without limitation the right to sue, counterclaim, and recover for all past, present, and future infringement, misappropriation, or dilution thereof, and all rights corresponding thereto throughout the world. Nothing contained in this Agreement shall be construed to reduce or limit

5

the Employer's rights, title, or interest in or to any Work Product or Intellectual Property Rights so as to be less in any respects than that the Employer would have had in the absence of this Agreement.

(c)      Further Assurances; Power of Attorney. During and after your employment, you agree to reasonably cooperate with the Employer:  (i) to apply for, obtain, perfect, and transfer to the Employer the Work Product and all Intellectual Property Rights in and to the Work Product in any jurisdiction in the world; and (ii) to maintain, protect, and enforce the same, including without limitation by executing and delivering to the Employer any and all applications, oaths, declarations, affidavits, waivers, assignments, and other documents and instruments as shall be requested by the Employer. If you do not promptly cooperate with any such request, without limiting the rights the Employer shall have in such circumstances by operation of law, you hereby irrevocably grant the Employer power of attorney to execute and deliver any such documents on your behalf in your name, and to do all other lawfully permitted acts to transfer the Work Product to the Employer and to further the transfer, issuance, prosecution, and maintenance of all Intellectual Property Rights therein, to the fullest extent permitted by law. The power of attorney is coupled with an interest and shall not be affected or limited by your subsequent incapacity.

(d)      Moral Rights. To the extent any copyrights are assigned under this Agreement, you hereby irrevocably waive, to the extent permitted by law, any and all claims you may now or hereafter have in any jurisdiction to all rights of paternity, integrity, disclosure, and withdrawal, and any other rights that may be known as "moral rights," with respect to all Work Product and Intellectual Property Rights therein.

(e)      No License. You understand and agree that this Agreement does not grant you any license or right of any nature with respect to any Work Product or Intellectual Property Rights or any Confidential Information, materials, software, or other tools made available to you by the Employer.

## 5.      **Security and Other Obligations.**

(a)      Security and Access. You agree and covenant:  (i) to comply with all Employer security and privacy policies and procedures, including without limitation those pertaining to any and all Facilities & IT Resources; (ii) not to access or use any Facilities & IT Resources except as authorized by the Employer; and (iii) not to access or use any Facilities & IT Resources in any manner after termination of your employment with the Employer, whether such termination is voluntary or involuntary. You agree to notify the Employer promptly in the event you learn of any violation of the foregoing by others, or of any other Person's misappropriation or unauthorized access, use, reproduction, or reverse engineering of or tampering with any Facilities & IT Resources, Confidential Information, or other Employer Group property or materials.

(b)      Exit Obligations.  Promptly upon the voluntary or involuntary termination of your employment with the Employer or at the Employer's request at any time during or after your employment, you shall: (a) provide or return to the Employer any and all Employer Group property, including without limitation all keys, key cards, access cards, identification cards, security devices, employer credit cards, network access devices, computers, cell phones, smartphones, PDAs, pagers, fax

machines, equipment, speakers, webcams, manuals, reports, files, books, compilations, work product, email messages, recordings, tapes, disks, thumb drives or other removable information storage devices, hard drives, data, and all Employer Group documents and materials belonging to the Employer, including but not limited to those that constitute or contain any Confidential Information or Work Product, that are in your possession or control, whether they were provided to you by the Employer Group or any of its business partners or associates, or created by you in connection with your employment with the Employer; and (b) delete or destroy all copies of any such documents and materials not returned to the Employer that remain in your possession or control, including those stored on any non-Employer Group devices, networks, storage locations, and media in your possession or control.

(c)     <u>Notice to Future Employers</u>.  During the Restricted Period, prior to accepting any offer of other employment you will inform each new or potentially new employer of the existence and terms of this Agreement and will provide such new or potentially new employer with a copy of this Agreement in advance of commencing employment therewith.  You also authorize the Employer to notify any such new or potentially new employer of the existence and terms of this Agreement, including by providing a copy of this Agreement thereto.

**6.      Publicity.** You hereby consent to any and all uses and displays by the Employer Group and its agents of your name, voice, likeness, image, appearance, and biographical information in, on, or in connection with any pictures, photographs, audio and video recordings, digital images, websites, television programs, advertising campaigns, sales and marketing brochures, books, magazines, other publications, CDs, DVDs, tapes, and all other printed and electronic forms and media throughout the world, at any time during or after the period of your employment with the Employer, for any and all of the Employer Group's legitimate business purposes.

**7.      Acknowledgment.** You acknowledge and agree that the services to be rendered by you to the Employer are of a special and unique character; that you will obtain knowledge and skill relevant to the Employer's industry, methods of doing business, and marketing strategies by virtue of your employment; and that the terms and conditions of this Agreement are reasonable under these circumstances. You further acknowledge that the amount of your compensation reflects, in part, your obligations and the Employer's rights under this Agreement; that you have no expectation of any additional compensation, royalties, or other payment of any kind in connection herewith; that you will not be subject to undue hardship by reason of your full compliance with the terms and conditions of this Agreement or the Employer's enforcement thereof; and that this Agreement is not a contract of employment and shall not be construed as a commitment by either of the Parties to continue an employment relationship for any certain period of time. **<u>Nothing in this Agreement shall be construed in any way to terminate, supersede, undermine, or otherwise modify the at-will status of the employment relationship between the Employer and you, pursuant to which either the Employer or you may terminate the employment relationship at any time, with or without cause, and with or without notice</u>**.

**8.      Remedies.** You acknowledge that the Employer's Confidential Information and the Employer's ability to reserve it for the exclusive knowledge and use of the Employer is of great competitive importance and commercial value to the Employer, and that any breach of this Agreement (including without limitation improper use or disclosure of any Confidential Information or partial or complete

interference with any of the Employer's goodwill or business relationships) by you will cause irreparable harm to the Employer and Employer Group for which remedies at law would not be adequate. In the event of any breach or threatened breach by you of any of the provisions of this Agreement, you hereby consent and agree that the Employer shall be entitled, in addition to other available remedies, to a temporary, preliminary, and/or permanent injunction and/or other equitable relief against such breach or threatened breach from any court of competent jurisdiction, without the necessity of posting any bond or other security. The Employer shall further be entitled to recover its attorneys' fees, expenses, and costs incurred in establishing any breach of this Agreement by you. The above-mentioned equitable relief shall be in addition to, not in lieu of, any legal remedies, monetary damages, or other available forms of relief. You agree that the running of the period of restrictions set forth in Section 3(a), Section 3(b), and Section 3(c) shall be tolled (i.e., shall not run) during any period that you are in breach of any of the provisions of this Agreement.  You further acknowledge that each member of the Employer Group is an intended third-party beneficiary of this Agreement.

9.     **Successors and Assigns.**  The Employer may assign this Agreement to any subsidiary or corporate affiliate in the Employer Group or otherwise, or to any successor or assign (whether direct or indirect, by purchase, merger, consolidation, or otherwise) to all or substantially all of the business or assets of the Employer. This Agreement shall inure to the benefit of the Employer and its successors and assigns. You may not assign this Agreement or any part hereof. Any purported assignment by you shall be null and void from the initial date of purported assignment.

10.    **Notice of Immunity.**  In accordance with the Defend Trade Secrets Act of 2016, you are hereby provided notice that individuals shall not be held criminally or civilly liable under any federal or state trade secret law for the disclosure of a trade secret that is made:  (a) (i) in confidence to a federal, state, or local government official, either directly or indirectly, or to an attorney; and (ii) solely for the purpose of reporting or investigating a suspected violation of law; or (b) is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal. An individual who files a lawsuit for retaliation by an employer for reporting a suspected violation of law may disclose the trade secret to the attorney of the individual and use the trade secret information in the court proceeding, if the individual: (x) files any document containing the trade secret under seal; and (y) does not disclose the trade secret, except pursuant to court order.

11.    **Entire Agreement.** Unless otherwise expressly set forth herein, this Agreement contains all the understandings and representations between you and the Employer pertaining to the subject matter hereof and supersedes all prior and contemporaneous understandings, agreements, representations, and warranties, both written and oral, with respect to such subject matter.

12.    **Modification and Waiver.** No provision of this Agreement may be amended or modified by the Parties unless such amendment or modification is agreed to in writing and signed by both you and a duly authorized officer of the Employer. No waiver by either of the Parties of any breach by the other party hereto of any term or condition of this Agreement shall be deemed a waiver of any similar or dissimilar term or condition at the same or any prior or subsequent time, nor shall the failure of or delay by either of the Parties in exercising any right, power, or privilege hereunder operate as a waiver thereof to preclude any other or further exercise thereof or the exercise of any other such right, power, or privilege.

**13.    Severability.** Should any provision of this Agreement be held by a court of competent jurisdiction to be enforceable only if modified, or if any portion of this Agreement shall be held as unenforceable, such holding shall not affect the validity of the remainder of this Agreement, the balance of which shall continue to be binding upon the Parties with any such modification to become a part hereof and treated as though originally set forth in this Agreement. The Parties further agree that any court of competent jurisdiction is expressly authorized to modify any unenforceable provision of this Agreement in lieu of severing such unenforceable provision in its entirety from this Agreement, whether by rewriting the offending provision, deleting any or all of the offending provision, adding additional language to this Agreement, or making such other modifications as it deems warranted to carry out the intent and agreement of the Parties as embodied herein to the maximum extent permitted by law. The Parties expressly agree that this Agreement as so modified by the court shall be binding upon and enforceable against each of them. In any event, should one or more of the provisions of this Agreement be held to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provisions hereof, and if such provisions are not modified as provided above then this Agreement shall be construed as if the invalid, illegal, or unenforceable provisions had not originally been set forth herein.

**14.    Captions.** Captions and headings of the sections and paragraphs of this Agreement are intended solely for convenience and shall not affect the meaning or interpretation of any term or provision of this Agreement.

**15.    Tolling.** Should you violate any of your obligations articulated herein, in addition to all other legal and equitable rights and remedies available to Employer, the obligations at issue shall automatically be extended as follows:  such obligations shall be tolled and shall not run during any timeframe in which you are in violation of any terms or provisions of this Agreement, and will again start to run from the first date on which you cease to be in violation of such obligation.

**16.    Counterparts.** This Agreement may be executed electronically or traditionally in counterparts, each of which shall be deemed an original, but all of which taken together shall constitute one and the same instrument.  A signed copy of this Agreement delivered by facsimile, email, or other means of electronic transmission shall be deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

*[Signatures Follow.]*

**IN WITNESS WHEREOF**, the Parties have executed and entered into this Agreement as of the Effective Date above.

BARTON & ASSOCIATES, INC.

By: _Heather Philbrick_____

Name: Heather Philbrick

Title: Sr. Human Resources Generalist

EMPLOYEE:

Signature: _Kendall Guaglianone_____

Print Name: Kendall Guaglianone_____

Date: 2/12/2019_____

[Signature Page to Confidentiality, Restrictive Covenants, and Proprietary Rights Agreement]

EXHIBIT D

**Barton** Associates

June 27, 2019

Jamie Trainor
21150 N Tatum Apt 3056
Phoenix, AZ 85050

Dear Jamie:

As you are aware, your employment with Barton & Associates, Inc. ("**Barton**" or the "**Company**") terminated on June 27, 2019.  Barton would like to remind you by way of this letter of your continuing obligations to Barton and its affiliates following your recent separation from employment.

Please recall that you previously signed one or more Confidentiality, Restrictive Covenants, and Proprietary Rights Agreements (f/k/a Confidential Information, Nonsolicitation and Noncompetition Agreement) (each, an "**Agreement**") with the Company, a copy of which is enclosed (if you signed multiple Agreements, the enclosed is the most recent). Capitalized terms used but not defined in this letter have the meanings ascribed to them in the Agreement. Under the Agreement, you agreed to obligations and restrictive covenants involving the Company's Confidential Information and intellectual property, as well as its employees, customers, competitors, Clients, and Providers. Please refer to the Agreement itself for the specific restrictions, representations, warranties, and covenants to which you have agreed.

The Agreement survives termination of your employment with the Company and remains in effect until the time periods specified therein. Applicable state law may also impose on you a continuing duty of loyalty, which further prohibits you from disclosing Barton's confidential or trade secret information at any time during or following your employment with Barton.

Barton expects that you will inform any new employer about these continuing obligations, and that your new employer(s) will respect these obligations and refrain from inducing you to breach them or benefitting in any way from your breach. Please be aware that, if Barton suspects a breach of the Agreement caused by you or any new employer, Barton will take any and all action necessary to enjoin the breach and will seek full compensation for all harm caused by it.

If you have any questions about this letter or the Agreement referenced herein, please contact me at dcampbell@bartonassociates.com.

Sincerely,
**BARTON & ASSOCIATES, INC.**

Danielle Campbell
Sr. Manager HR Operations

EXHIBIT E

**Barton** Associates

April 3, 2020

Andre Godbout
2916 E Nisbet Ct
Phoenix, AZ 85032

Dear Andre:

As you are aware, your employment with Barton & Associates, Inc. ("**Barton**" or the "**Company**") terminated on April 2, 2020.  Barton would like to remind you by way of this letter of your continuing obligations to Barton and its affiliates following your recent separation from employment.

Please recall that you previously signed one or more Confidentiality, Restrictive Covenants, and Proprietary Rights Agreements (f/k/a Confidential Information, Nonsolicitation and Noncompetition Agreement) (each, an "**Agreement**") with the Company, a copy of which is enclosed (if you signed multiple Agreements, the enclosed is the most recent). Capitalized terms used but not defined in this letter have the meanings ascribed to them in the Agreement. Under the Agreement, you agreed to obligations and restrictive covenants involving the Company's Confidential Information and intellectual property, as well as its employees, customers, competitors, Clients, and Providers. Please refer to the Agreement itself for the specific restrictions, representations, warranties, and covenants to which you have agreed.

The Agreement survives termination of your employment with the Company and remains in effect until the time periods specified therein. Applicable state law may also impose on you a continuing duty of loyalty, which further prohibits you from disclosing Barton's confidential or trade secret information at any time during or following your employment with Barton.

Barton expects that you will inform any new employer about these continuing obligations, and that your new employer(s) will respect these obligations and refrain from inducing you to breach them or benefitting in any way from your breach. Please be aware that, if Barton suspects a breach of the Agreement caused by you or any new employer, Barton will take any and all action necessary to enjoin the breach and will seek full compensation for all harm caused by it.

If you have any questions about this letter or the Agreement referenced herein, please contact me at dcampbell@bartonassociates.com.

Sincerely,
**BARTON & ASSOCIATES, INC.**

Danielle Campbell
Sr. Manager HR Operations

EXHIBIT F

**Barton** Associates

June 25, 2020

Kendall Guaglianone
1012 West 10th Street
Tempe, AZ 85281

Dear Kendall:

As you are aware, your employment with Barton & Associates, Inc. ("**Barton**" or the "**Company**") terminated on June 25, 2020.  Barton would like to remind you by way of this letter of your continuing obligations to Barton and its affiliates following your recent separation from employment.

Please recall that you previously signed one or more Confidentiality, Restrictive Covenants, and Proprietary Rights Agreements (f/k/a Confidential Information, Nonsolicitation and Noncompetition Agreement) (each, an "**Agreement**") with the Company, a copy of which is enclosed (if you signed multiple Agreements, the enclosed is the most recent). Capitalized terms used but not defined in this letter have the meanings ascribed to them in the Agreement. Under the Agreement, you agreed to obligations and restrictive covenants involving the Company's Confidential Information and intellectual property, as well as its employees, customers, competitors, Clients, and Providers. Please refer to the Agreement itself for the specific restrictions, representations, warranties, and covenants to which you have agreed.

The Agreement survives termination of your employment with the Company and remains in effect until the time periods specified therein. Applicable state law may also impose on you a continuing duty of loyalty, which further prohibits you from disclosing Barton's confidential or trade secret information at any time during or following your employment with Barton.

Barton expects that you will inform any new employer about these continuing obligations, and that your new employer(s) will respect these obligations and refrain from inducing you to breach them or benefitting in any way from your breach. Please be aware that, if Barton suspects a breach of the Agreement caused by you or any new employer, Barton will take any and all action necessary to enjoin the breach and will seek full compensation for all harm caused by it.

If you have any questions about this letter or the Agreement referenced herein, please contact me at dcampbell@bartonassociates.com.

Sincerely,
**BARTON & ASSOCIATES, INC.**

Danielle Campbell
Sr. Manager HR Operations