**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Barton & Associates Incorporated,<br><br>    Plaintiff,<br><br>vs.<br><br>Jamie Trainor, et al.<br><br>    Defendants. | No. CV-20-01560-PHX-SPL<br><br>**ORDER** |

**I. INTRODUCTION**

  Plaintiff Barton & Associates Incorporated is a physician staffing business (known as a "*locum tenens*") that recruits medical providers to fill temporary positions at various facilities. (Doc. 12 at 3). Defendants are three individual former employees (Andre Godbout, Kendall Guaglianone, and Jamie Trainor) (hereinafter "Employee Defendants") as well as the competitor business for which they now work (AB Staffing Solutions, LLC). (Doc. 12 at 2). Barton alleges the Employee Defendants forwarded provider resumes and other confidential documents from its database to their personal email accounts shortly before leaving in breach of confidentiality provisions in their employment agreements, and that AB Staffing is using the documents to gain an unfair advantage. (Doc. 12 at 2).

  On August 5, 2020, Barton filed a Complaint in this Court alleging breach of contract and conversion claims again Employee Defendants, and intentional interference of contractual relations and unjust enrichment claims against AB Staffing. (Doc. 1). Barton seeks injunctive relief as well as compensatory damages. (Doc. 1). On August 26, 2020,

Barton filed a Motion for Preliminary Injunction ("PI") seeking to enjoin Defendants from keeping and using Barton's documents (and information contained therein) and requesting oral argument. (Doc. 12). The Court held oral argument on October 14, 2020.

## II.   BACKGROUND

Defendant Godbout was an Account Manager at Barton focused on locating and engaging with Barton's clients. (Doc. 12 at 2-3). Barton alleges Godbout sent himself a confidential PowerPoint presentation with information about Barton's sales strategies and solicited Barton clients upon transferring to AB Staffing. (Doc. 12 at 2, 7-8); (Doc. 1 at ¶¶ 68, 71). Defendant Guaglianone was a Recruiter for Barton focused on locating and building relationships with medical providers to later place with Barton's clients. (Doc. 12 at 5). Barton alleges Guaglianone sent himself one curriculum vitae belonging to a Barton medical provider along with a blank "provider timesheet." (Doc. 12 at 2, 8). Godbout and Guaglianone filed a joint Response arguing that the documents are not confidential because they are otherwise available online on "job boards," that none of the documents have been given to or used at AB Staffing, and that all of the documents have since been returned to Barton. (Doc. 37 at 4, 5, 6, 8). In its Reply (Doc. 41), Barton argues Godbout and Guaglianone did not return the documents until after Barton filed the PI Motion. (Doc. 41 at 3). Though they have since been returned, Barton argues a PI is necessary to prevent Defendants' continued use and disclosure of them. (Doc. 41 at 3).

Defendant Trainor was also a Recruiter at Barton. (Doc. 12 at 3, 5). Barton alleges Trainor sent himself resumes and curricula vitae of 42 medical providers, several of whom now work with AB Staffing, as well as a blank "provider timesheet." (Doc. 12 at 2, 5, 7); (Doc. 1 at ¶¶ 58, 60). In response, Defendant Trainor also argues the curricula vitae are not confidential because they are publicly available and, even if they were confidential, Barton has not been harmed because the only provider who was not already in AB Staffing's system previously advised Trainor she would not work with Barton again. (Doc. 30 at 1-2, 3-4). Trainor also argues that he has returned all the documents to Barton and no longer has access to them. (Doc. 30 at 4). In its Reply (Doc. 33), Barton asserts that,

although the documents have been returned, it has "compelling evidence" that the content of the resumes "continue[] to reside" in AB Staffing's database. (Doc. 33 at 5).[1]

AB Staffing is another *locum tenens* company for which Employee Defendants now work. (Doc. 12 at 2). Barton argues AB Staffing hired Employee Defendants knowing they worked for Barton and, after receiving a cease and desist letter from Barton, knew of the Employees confidentiality obligations but nonetheless continues to use the confidential documents to gain an unfair advantage. (Doc. 12 at 2, 8-9). In response, AB Staffing also disputes the confidential nature of the resumes and argues it was not aware of any alleged breaches of the employment agreements (nor did it induce them). (Doc. 38 at 2). AB Staffing further argues that Barton waited too long after the alleged breaches to seek the PI such that Barton cannot show irreparable injury. (Doc. 38 at 2-3). In its Reply (Doc. 40), Barton asserts AB Staffing allowed Defendant Trainor to upload the resumes into its system and, after receiving a demand letter from Barton, failed to take any remedial action. (Doc. 40 at 5-6). Regarding the delay in seeking the PI, Barton blames the pandemic in part, and also blames Employee Defendants for misleading it to believe they were not entering the *locum tenens* industry such that it felt no need to urgently investigate their post-employment activities. (Doc. 40 at 9-10).

### III.   LEGAL STANDARD

A preliminary injunction is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Titaness Light Shop, LLC v. Sunlight Supply, Inc.*, 585 F. App'x 390, 391 (9th Cir. 2014) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). An injunction may be granted only where the movant shows that "he is likely to succeed on the merits, that he is likely to suffer

---

[1] Barton also asserts for the first time in its Reply that it "expects to show" that Employee Defendants have confidential information on their cell phones. (Doc. 33 at 3, 4 n.2). Because this argument was raised for the first time in the Reply, and at oral argument Barton made clear the allegation is purely speculative, this allegation will not be considered. *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief.").

irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Herb Reed Enterprises, LLC v. Fla. Entm't Mgmt., Inc.*, 736 F.3d 1239, 1247 (9th Cir. 2013) (quoting *Winter*, 555 U.S. at 20).

As a threshold matter, if the moving party fails to demonstrate likelihood of success on the merits, the court need not address the remaining elements. *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015). However, the four factors may be evaluated on a sliding scale under this Circuit's "serious questions" test: "[a] preliminary injunction is appropriate when a plaintiff demonstrates that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor." *Alliance for the Wild Rockies v. Cottrell*, 632 F. 3d 1127, 1134-35 (9th Cir. 2011) (citing *Lands Council v. McNair*, 537 F.3d 981, 987 (9th Cir. 2008) (en banc)) (internal quotations omitted). "Of course, plaintiffs must also satisfy the other *Winter* factors . . . a likelihood of irreparable injury and [a showing] that the injunction is in the public interest." *Id.* at 1135.

## IV.   DISCUSSION

Barton asserts, and Defendants do not dispute, that Defendants Trainor and Godbout's employment agreements are governed by Massachusetts law, and that Defendant Guaglianone's employment agreement does not have a choice of law provision such that Arizona law governs. (Doc. 12 at 9 n.2); (Doc. 1-1 at 10, 22). Accordingly, this Court will apply both Arizona and Massachusetts substantive law.

### A. Probability of Success on the Merits

#### i.   *Employee Defendants*

Regarding the breach of contract claim against Employee Defendants, Barton argues it has a strong probability of success on the merits because the Employee Defendants each signed employment agreements with "clear and unequivocal" confidentiality provisions. (Doc. 12 at 9-10). Barton further alleges that both Arizona and Massachusetts courts consistently find customer information protectible, that Barton made it clear that the documents/information were confidential, and that the Employee Defendants have used the information to obtain customers and therefore harm Barton. (Doc. 12 at 10-11). Regarding

the conversion claim, Barton argues it has a probably of success because, by providing the information to AB Staffing, the Employee Defendants have seriously interfered with Barton's ability to use the information since if the customers now work with AB Staffing they are less likely to be available to work with Barton. (Doc. 12 at 12-13).

Barton is unlikely to succeed on the merits of the breach of contract claim against Employee Defendants. The main issues in this breach of contract claim are (1) whether the confidentiality provision, as written, is enforceable; and (2) whether the information allegedly taken by the Employee Defendants is in fact confidential.

The Court rejects Defendant's argument that the confidentiality provision in the employment agreement is overly broad. (Doc. 30 at 3-4). The agreement defines confidential information, in relevant part, as "all information that is proprietary, sensitive, secret, or not generally known to the public . . . Confidential Information shall not include information that is generally available to and known by the public" (Doc. 1 at 8-9). Defendants argue this is overly broad because it includes information like the CVs obtained by Defendants which are otherwise available from other sources such as "job boards." However, a confidentiality provision is not overly broad where it exempts from the definition information that enters the public domain. *See, e.g.*, *Williams & Lake LLC v. Genesis Sys. LLC*, No. CV-17-00117-TUC-CKJ, 2017 WL 6418937, at *10 (D. Ariz. Sept. 13, 2017) (finding a confidentiality provision enforceable where it "states that the employee is prevented from disclosing confidential information, unless the information enters the public domain"). The agreement here exempts publicly available information. Thus, the confidentiality agreement here is enforceable as written. The remaining question is whether the documents taken by Employee Defendants fall within its definition.

Information constituting a "trade secret" is entitled to protection from misappropriation, *Calisi v. Unified Fin. Servs., LLC*, 232 Ariz. 103, 106 ¶ 14 (App. 2013), and customer information, if "truly confidential, and to a substantial degree inaccessible, [also] may be given a measure of the protection accorded true trade secrets," *Amex Distrib. Co., Inc.*, 150 Ariz. at 516. Information available in trade journals, reference books, or

5

published materials, however, is considered public knowledge and not confidential. *Enter. Leasing Co. of Phoenix v. Ehmke*, 197 Ariz. 144, 149 ¶ 15, 3 P.3d 1064, 1069 (App. 1999). Further, under Massachusetts law, information about a third party is not confidential if competitors could obtain the same information directly from the third party. *See Banner Indus. v. Bilodeau*, 15 Mass. L. Rptr. 705, 2003 WL 831974, *4 (Mass. Super. Ct. 2003) (manufacturer lists not confidential because others could obtain same information directly from the manufacturers). Similarly, information obtainable from publicly available sources is not confidential. *Hamburger v. Hamburger*, 4 Mass. L. Rptr. 409, 1995 WL 579679, *2 (Mass. Super. Ct. 1995) ("[C]ustomer lists are not [confidential] if the information is readily available from published sources, such as business directories").

At issue are several curricula vitae of healthcare providers, a blank "provider timesheet," and a PowerPoint presentation containing Barton's sales strategies. Defendants allege the information is otherwise available to the public (such as through "job boards"). Barton does not dispute this, other than making conclusory allegations that the information is "confidential" and "proprietary." Barton has not disputed—either in its briefing or during oral argument—that the provider resumes are otherwise publicly accessible. Instead, Barton argues "the fact that the individuals accept *locum tenens* positions through Barton is confidential." (Doc. 40 at 7); *see also* (Doc. 41 at 3-4). The Court finds this argument unpersuasive.

Barton cites *E*Trade Fin. Corp. v. Eaton*, 305 F. Supp. 3d 1029, 1037 (D. Ariz. 2018) for the proposition that a client's association with a business is protectible even where the client's name is public information. (Doc. 41 at 4). In *E*Trade*, however, the plaintiff was a wealth management company "where client status translates directly into high net worth." *Id.* at 1036. The Court noted that when a client's name "is associated with that person's status as a client, whether of a lawyer, a plastic surgeon, a private investigator or an investment advisor, such information is confidential, precisely because of their status as a client *and their desire to keep private matters private.*" *Id.* at 1036. Barton does not provide any argument that its providers, like the clients of plastic surgeons or private

investigators, have a desire to keep their participation in the *locum tenens* industry private, and it further failed to do so at oral argument. If anything, as Defendant pointed out in oral argument, the providers would have an interest in publicizing their availability for *locum tenens* placement so they could secure additional employment. Barton does not refute this, and instead only provides reasons why *Barton* has an interest in maintaining the confidentiality of the providers' status as its clients. In sum, the information appears non-confidential and Barton is not likely to succeed on the breach of contract claim.

Barton is also unlikely to succeed on the merits of the conversion claim against Employee Defendants. To succeed on a conversion claim under either Arizona or Massachusetts law, Barton must show "an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." *Focal Point, Inc. v. U–Haul Co. of Ariz.*, 155 Ariz. 318, 319, 746 P.2d 488, 489 (App. 1986); *In re Hilson*, 448 Mass. 603, 611, 863 N.E.2d 483, 491 (2007) (same). Furthermore, "[a]n action for conversion ordinarily lies only for personal property that is tangible, or to intangible property that is merged in, or identified with, some document." *Id*.  In *Miller v. Hehlen*, the Arizona Court of Appeals considered a claim for conversion of a customer list in the context of a breach of a restrictive covenant. 209 Ariz. 462 (Ct. App. 2005). The defendant employee allegedly took "customer information and interfer[ed] with the relationships Miller had established with those customers." *Id*. at 472. The court held that a claim for conversion was not appropriate because "Miller did not allege that Hehlen took a customer list in the form of a single, unified document that had value as tangible property." *Id. Compare Swisher Hygiene Franchise Corp. v. Clawson*, No. CV-15-1331-PHX-DJH, 2017 WL 11247886, at *9 (D. Ariz. Sept. 11, 2017) (finding that "the customer and pricing information at issue is not the proper subject of a conversion action. The information is intangible but has not been merged in a document that has its own value in the same sense as a stock certificate or insurance policy") *with Pioneer Commercial Funding Corp. v. United Airlines, Inc*., 122 B.R. 871, 885 (S.D.N.Y. 1991)  (holding that accounts receivable

can be the subject of a conversion action because "receivables, while resulting from accounting entries, nevertheless represent tangible, marketable assets which can be sold, secured, or traded").

Here, the documents that form the basis of Barton's conversion claims are provider curricula vitae, a PowerPoint presentation, and provider timesheets. Like the customer list in *Miller* and the customer and pricing information in *Swisher*, Barton's provider CVs and strategic documents are not independently valuable as tangible property; rather, by Barton's own admission, their value is derived from the competitive advantage they afford Barton. (Doc. 12 at 13) ("Barton's Providers, in whom Barton has invested substantial resources, are less likely to be available for placement if the information Barton has collected is disseminated to competing companies. Similarly, any competitive advantage Barton hoped to gain from the strategy described in its strategic document will be less useful if Barton's direct competitor has the same information. As such, Barton should succeed on its conversion claim."). Because the documents at issue cannot form the basis of a conversion claim, Barton is unlikely to succeed on the merits.

### ii. Defendant AB Staffing

Regarding the intentional interference of contractual relations claim, Barton argues it has a probability of success on the merits because it notified AB Staffing that Employee Defendants were in breach of the agreement and that AB Staffing failed to require them to return the documents or stop using them. (Doc. 12 at 13). Regarding the unjust enrichment claim, Barton argues it has a probability of success because AB Staffing was given a wealth of valuable provider information without expending any resources. (Doc. 12 at 13-14).

Because the Court finds Barton is unlikely to succeed on the argument that the documents taken by Employee Defendants are truly confidential, Barton is also unlikely to succeed on the intentional interference of contractual relations claim (which hinges on a breach of the confidentiality agreement). *See Neonatology Assocs., Ltd. v. Phoenix Perinatal Assocs. Inc.*, 216 Ariz. 185, 187, 164 P.3d 691, 693 (Ct. App. 2007) (explaining that the tort of intentional interference with contractual relations claim requires the plaintiff

to prove "intentional interference inducing or causing a breach"). Similarly, "[u]njust enrichment occurs whenever a person has and retains money or benefits that in justice and equity belong to another." *City of Sierra Vista v. Cochise Enter., Inc*., 144 Ariz. 375, 381, 697 P.2d 1125, 1131 (App.1984). Unjust enrichment provides a flexible "remedy when a party has received a benefit at another's expense and, in good conscience, the benefitted party should compensate the other." *Wang Elec., Inc. v. Smoke Tree Resort*, LLC, 230 Ariz. 314, 318, 283 P.3d 45, 49 (App.2012). At this juncture, where Barton has failed to sufficiently show the documents taken by Defendants are truly confidential or not otherwise publicly accessible, justice and equity weigh against an unjust enrichment remedy. Accordingly, Barton is unlikely to prevail on the merits of this claim too.

Because, as discussed above, Barton does not have a high probability of success on the merits on its claims, an injunction is not warranted. *See Pimentel v. Dreyfus*, 670 F.3d 1096, 1105-06 (9th Cir. 2012) (per curiam) ("[A]t an irreducible minimum," the party seeking an injunction "must demonstrate a fair chance of success on the merits, or questions serious enough to require litigation") (citation and alteration omitted). Nonetheless, the Court will also address the other two elements required for a PI: irreparable injury and balance of hardships.

### B.  Irreparable Injury

Barton argues it will suffer irreparable injury if the PI is denied because "Barton has no other way of protecting itself from ongoing harm to its goodwill and business relationships at the hands of Defendants." (Doc. 12 at 14). Specifically, Barton argues it has "invested substantial resources and energy into developing its relationships with its Providers" and that "Defendants stand to unfairly profit from" the continued use of the documents. (Doc. 12 at 14); *see also* (Doc. 40 at 9) ("The fact is ABSS still maintains the fruits of the stolen Barton documents and information ready and available for ABSS's own use. As such, the harm to Barton is not only imminent, but ongoing."). Employee Defendants argue Barton will not suffer irreparable harm if the PI is denied because they have returned all the allegedly confidential documents and any harm related to the prior

use of such information is redressable with damages. (Doc. 30 at 4); (Doc. 37 at 7-8). AB Staffing argues, among other things, that Barton's delay in seeking the PI shows no irreparable injury in denying it. (Doc. 38 at 9-11).

Irreparable harm is "that for which compensatory damages are unsuitable." *MGM Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1210 (C.D. Cal. 2007) (quoting *Wildmon v. Berwick Universal Pictures*, 983 F.2d 21, 24 (5th Cir. 1992)). Because a breach of contract is generally compensable by money damages, an injunction "will rarely issue based on a breach of contract absent evidence of intangible injuries that may stem from the breach." *Pure Wafer Incorporated v. City of Prescott*, 2017 WL 3235404, at *3 (D. Ariz., 2017). Here, Barton fails to adequately address why monetary damages would not make it whole. When discussing the conversion claim against Employee Defendants, Barton explained the injury it has suffered as follows:

> Barton's Providers, in whom Barton has invested substantial resources, are less likely to be available for placement if the information Barton has collected is disseminated to competing companies. Similarly, any competitive advantage Barton hoped to gain from the strategy described in its strategic document will be less useful if Barton's direct competitor has the same information.

(Doc. 12 at 13).

Regarding the "strategic document" (*i.e.*, the PowerPoint presentation), Defendant Godbout alleges—and Barton does not dispute—that the presentation has already been returned to Barton. Barton merely asserts that the presentation was *belatedly* returned (after the PI motion was filed). Be that as it may, the fact that the presentation has since been returned negates a finding that injunctive relief is the appropriate remedy here. And because the actual presentation has been returned, it would be difficult for the Court to fashion an appropriate injunction preventing Employee Defendants from using the sales strategies they learned from the presentation or while working for Barton generally. *See Winston Research Corp. v. Minnesota Min. & Mfg. Co.*, 350 F.2d 134, 144 (9th Cir. 1965) ("[E]mployees cannot be denied the right to use their general skill, knowledge, and

experience, even though acquired in part during their employment."). Additionally, money damages would adequately address Defendants use of Barton's provider resumes. As Defendant asserted at oral argument, the Court can calculate the profit Barton would receive from working with the providers who now instead work with AB Staffing. Such economic relief would be sufficient to make Barton whole, would be consistent with Barton's own theory of its injury, and would avoid the extreme remedy of injunctive relief.[2]

Regarding the delay in seeking the PI, Barton blames the pandemic in part, and also blames Employee Defendants for misleading it to believe they were not entering the *locum tenens* industry such that it did not feel the need to investigate their post-employment activities. (Doc. 40 at 9-10). Of course, this does not explain the delay between Barton actually discovering the alleged breaches and bringing the suit (a delay of five and two months), or the delay between filing the Complaint and seeking the PI (a delay of three weeks). A delay in seeking a preliminary injunction is a factor to be considered in weighing the propriety of relief. *Lydo Enterprises, Inc. v. City of Las Vegas*, 745 F.2d 1211, 1213 (9th Cir. 1984); *see also Cuviello v. City of Vallejo*, 944 F.3d 816, 833 (9th Cir. 2019) ("It is generally recognized that a long delay before seeking a preliminary injunction implies a lack of urgency and irreparable harm.") (internal citations omitted); *Equinox Hotel Mgmt., Inc. v. Equinox Holdings, Inc.*, No. 17-CV-06393-YGR, 2018 WL 659105, at *12 (N.D. Cal. Feb. 1, 2018) (considering as evidence of lack of harm, in part, that "Plaintiff waited an additional three weeks [after filing the complaint] to seek a preliminary injunction"). The mere fact that Barton once thought it could trust its former employees with confidential information does not excuse it from failing to take legal action once Barton discovered it could not. Though not dispositive, the delay in seeking the PI weighs against a finding that Barton would suffer irreparable harm if it is not granted.

///

---

[2] The Court will not address the alleged injury caused by the taking of the blank provider timesheets because Barton has failed to set forth any argument as to their confidential or proprietary nature.

### C. Balance of Hardships and Public Interest

Barton argues that the balance of hardships and public interest concerns weigh in favor of granting the PI because Barton continues to suffer irreparable harm without injunctive relief, and Defendants will suffer little hardship from having to return the confidential documents to which they are not entitled. (Doc. 12 at 15). However, having provided insufficient evidence to conclude the documents are in fact confidential as described above, this argument falls short.

### V. CONCLUSION

Having considered the *Winter* factors in turn, the Court finds that injunctive relief is not appropriate in this case. 555 U.S. 7 (2008). Barton fails to meet its burden to demonstrate it is likely to succeed on the merits or to suffer immediate and irreparable harm in the absence of injunctive relief. Accordingly,

**IT IS ORDERED** that Plaintiff's Motion for Preliminary Injunction (Doc. 12) is **denied**.

Dated this 15th day of October, 2020.

Honorable Steven P. Logan
United States District Judge