**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Barton & Associates Incorporated,<br><br>                Plaintiff,<br>vs.<br><br>Jamie Trainor, et al.<br><br>                Defendants. | No. CV-20-01560-PHX-SPL<br><br>**ORDER** |

Before the Court is Defendant Jamie Trainor's Motion for Judgment on the Pleadings (Doc. 46), in which Defendants Andre Godbout and Kendall Guaglianone have also joined (Doc. 47). For the following reasons, the Court will grant the Motion in part and deny it in part.

**I.      BACKGROUND**

Plaintiff Barton & Associates Incorporated is a physician staffing business (known as a "*locum tenens*") that recruits medical providers to fill temporary positions at various facilities. (Doc. 12 at 3). Defendants are three individual former Barton employees (Andre Godbout, Kendall Guaglianone, and Jamie Trainor) (hereinafter "Employee Defendants") as well as the competitor business for which they now work (AB Staffing Solutions, LLC). (Doc. 12 at 2). Barton alleges the Employee Defendants forwarded provider resumes and other confidential documents from its database to their personal email accounts shortly before leaving in breach of their employment agreements, and that AB Staffing is using the information to gain an unfair advantage. (Doc. 12 at 2).

On August 5, 2020, Barton filed a Complaint in this Court alleging breach of contract and conversion claims against the Employee Defendants, and intentional interference of contractual relations and unjust enrichment claims against AB Staffing. (Doc. 1). On August 26, 2020, Barton filed a Motion for Preliminary Injunction ("PI") (Doc. 12), which the Court ultimately denied (Doc. 43).

The Employee Defendants now seek a judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). (Doc. 46). Defendants argue that, "[b]ased on the pleadings, there is no issue of material fact and [Defendants are] entitled to judgment as a matter of law . . . because the information is neither confidential nor the proper subject of a conversion claim." (Doc. 46 at 2).

**II.   LEGAL STANDARD**

A party may file a motion for judgment on the pleadings under Rule 12(c) on the basis "the pleadings disclose that there are no material issues of fact to be resolved and that party is entitled to judgment as a matter of law." 49 CFR § 821.17. A district court reviews a Rule 12(c) motion under the same legal standard as Rule 12(b)(6). *Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989). Therefore, all the factual allegations in the complaint are taken as true. *See Id.* However, a court is not required to accept as true any legal conclusions that are not supported by factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The motion will be granted only if a court finds that no issue of fact exists, and that the movant is entitled to judgment as a matter of law. *Enron Oil Trading & Transp. Co. v. Walbrook Ins. Co., Ltd.*, 132 F.3d 526, 529 (9th Cir. 1997).

**III.   ANALYSIS[1]**

**A.  Breach of Contract Claim**

In its Complaint, Barton identifies two separate provisions of the employment

---

[1] Barton asserts, and Defendants do not dispute, that Defendants Trainor and Godbout's employment agreements are governed by Massachusetts law, and that Defendant Guaglianone's employment agreement does not have a choice of law provision such that Arizona law governs. (Doc. 12 at 9 n.2); (Doc. 1-1 at 10, 22). Accordingly, this Court will apply both Arizona and Massachusetts substantive law.

2

agreements that it alleges the Employees Defendants breached—a "confidentiality provision" (which is the focus of the Employees' Motion for Judgment on the Pleadings) and a provision that "obligated [the Employee Defendants] to return all Barton materials, information and documents to Barton upon the termination of [their] employment." (Doc. 1 at 6, 7, 8). The Court will address both provisions.

                *i.*     *Confidentiality provision*

There remains a factual dispute as to whether the documents allegedly taken by the Employee Defendants are confidential. Information constituting a "trade secret" is entitled to protection from misappropriation, *Calisi v. Unified Fin. Servs., LLC*, 232 Ariz. 103, 106 (App. 2013), and customer information, if "truly confidential, and to a substantial degree inaccessible, [also] may be given a measure of the protection accorded true trade secrets," *Amex Distrib. Co. v. Mascari*, 150 Ariz. 510, 516 (Ct. App. 1986). Information available in trade journals, reference books, or published materials, however, is considered public knowledge and not confidential. *Enter. Leasing Co. of Phoenix v. Ehmke*, 197 Ariz. 144, 149 (App. 1999); *Hamburger v. Hamburger*, 4 Mass. L. Rptr. 409, 1995 WL 579679, *2 (Mass. Super. Ct. 1995) ("[C]ustomer lists are not [confidential] if the information is readily available from published sources, such as business directories"). Further, information about a third party is not confidential if competitors could obtain the same information directly from the third party. *See Banner Indus. v. Bilodeau*, 15 Mass. L. Rptr. 705, 2003 WL 831974, *4 (Mass. Super. Ct. 2003) (manufacturer lists not confidential because others could obtain same information directly from the manufacturers and "[c]lient relationships alone cannot be protected").

The documents at issue here are provider resumes, one PowerPoint presentation, and one blank provider "timesheet." (Doc. 1 at 17). Barton alleges that "the defendants knowingly obtained, used and disclosed internal and confidential Barton documents and information for the benefit of [AB Staffing]." (Doc. 1 at 1). Barton also alleges it "devotes significant resources and training to its Recruiters in order to locate Providers and maintain ongoing relationships with Providers." (Doc. 1 at 11). Further, Barton alleges it "keeps

3

confidential its lists and related information on all Clients" and that "[i]nformation related to Barton's Providers is maintained in a secure database, kept confidential, and given to its Recruiters and Account Managers." (Doc. 1 at 4). Additionally, Barton alleges it "takes steps to safeguard its confidential and/or proprietary information" including "limiting access to its internal confidential information to third parties, limiting access to its lists of Providers and Clients, using appropriate locks and badges, and having password protected computers and databases." (Doc. 1 at 5). Barton alleges the PowerPoint allegedly taken by Defendant Godbout was "labeled 'Confidential & Proprietary.'" (Doc. 1 at 14). Finally, Barton continuously uses the phrase "confidential and/or proprietary information and documents" to refer to the documents at issue.

Employee Defendants argue the information is not confidential because the Defendants "can obtain the information here directly from the providers and it is publicly available." (Doc. 46 at 2). In its Response, Barton maintains that the Employee Defendants "have not and cannot support" their assertion that "all provider information is located on job boards and, therefore, publicly available." (Doc. 52 at 5). Barton argues "whether or not Barton's Confidential Information is on job boards is an issue of fact that Barton disputes." (Doc. 52 at 5).

While it is true that information that is safeguarded and kept private is nonetheless not confidential if it is otherwise publicly available, this Court finds that there exists a factual dispute on the pleadings as to whether the documents in this case are in fact publicly available. Further, it is not clear from the pleadings the extent to which the information is available directly from the providers. *See, e.g.*, *Banner*, 2003 WL 831974, at *3 (considering "the ease or difficulty with which the information could be properly acquired" in addition to "the extent of measures taken by the employer to guard the secrecy of the information," "the value of the information to the employer and to his competitors," and "the amount of effort or money expended by the employer in developing the information"); *Diazteca Co. v. Palenque Foods Int'l LLC*, No. 1 CA-CV 17-0156, 2018 WL 2054144, at *3 (Ariz. Ct. App. May 3, 2018) (outlining the different ways in which "a particular use of

specific customer information may constitute a violation of a former employer's protectable interest," including when the customer list "represents a selective accumulation of detailed, valuable information," when the company "compiled the list by expending substantial efforts to identify and cultivate its customer base," when the information gives the business "a demonstrable competitive advantage over others in the industry," and "whether a business has divulged its customer list only to employees or has shared it with outsiders"). In sum, Plaintiff has adequately pled the documents at issue are confidential, and whether that claim is true is a fact-intensive issue that cannot be resolved on the pleadings alone. Accordingly, discovery is needed to determine whether the documents contain truly confidential information, and the Court will deny Defendants' Motion as it relates to the breach of the confidentiality provision of the employment contract.

        *i.*     *Return of documents*

There also remains a factual dispute regarding the return of documents provision. In the Complaint, Barton in part seeks "the immediate return of all Barton confidential and/or proprietary information." (Doc. 1 at 2). Barton alleges the employment agreement "obligated [the Employee Defendants] to return all Barton materials, information and documents to Barton upon the termination of [their] employment." (Doc. 1 at 6, 7, 8). Further, Barton alleges the Employee Defendants "continue to possess Barton confidential and/or proprietary information and documents." (Doc. 1 at 17). Additionally, Barton alleges Defendant Trainor "had solicited several of the Providers he had placed while at Barton" at AB Staffing and "has utilized information he improperly took from Barton in order to compete with Barton at his new employment." (Doc. 1 at 14). As to Defendant Godbout, Barton argues Godbout "began targeting another of Barton's Account Managers' Clients" and "has already placed a provider on assignment with a Barton Client." (Doc. 1 at 14-15). As to Defendant Guaglianone, Barton argues "Guaglianone would have had no reason to email the Barton Provider's curriculum vitae and the blank Barton Provider timesheet, if he was going to work for an industry staffing position." (Doc. 1 at 15).

In his Answer, Defendant Trainor "admits that he forwarded a copy of a blank

Barton Provider timesheet" but "denies" that he "has utilized information he improperly took from Barton in order to compete with Barton at his new employment with AB Staffing." (Doc. 25 at 5). In Defendants Godbout and Guaglianone's joint Answer, both Defendants implicitly acknowledge that they failed to return the documents upon termination, but allege they "did not use the document on behalf of Defendant AB Staffing," "did not disseminate the contents of the document," and "returned the document to Barton immediately upon Barton's request." (Doc. 26 at 9, 10).

In their Motion for Judgment on the Pleadings, the Employee Defendants do not address the issue of whether Barton has been harmed by the breach of the requirement to return Barton's documents. However, in its Response to the Motion, Barton points out that "all three Employees have admitted that they either took or retained Barton's Confidential Information when they left Barton's employment and did not return some or all of that information until after this lawsuit was filed" and argues it "believes that discovery will reveal that the Employees took even more Confidential Information than that of which Barton is already aware." (Doc. 52 at 4).

Under both Massachusetts and Arizona law, "[i]n any breach of contract action, the plaintiff must show the existence of a contract, breach of the contract, and resulting damages." *Wenima Dev., LLC v. Lawyers Title Ins. Corp.*, No. 1 CA-CV 11-0749, 2013 WL 85246, at *2 (Ariz. Ct. App. Jan. 8, 2013) (citing *Chartone, Inc. v. Bernini*, 207 Ariz. 162, 170, ¶ 30, 83 P.3d 1103, 1111 (App. 2004)); *see also Guckenberger v. Boston Univ.*, 957 F.Supp. 306, 316 (D. Mass. 1997) (finding that, to prove a breach of contract under Massachusetts law, a plaintiff must show "that there was a valid contract, that the defendant breached its duties under its contractual agreement, and that the breach caused the plaintiff damage") (citations omitted) (emphasis added).

The first two elements required for a breach of contract claim are not in dispute here. First, a valid contract existed between Barton and the Employee Defendants which required the Defendants, upon "voluntary or involuntary termination," to "return to [Barton] any and all Employer Group property" and "delete or destroy all copies of any such documents

6

and materials not returned to [Barton]." (Doc. 1 at 11-12). Second, as summarized above, all Employees admit to retaining Barton documents for at least some period after termination, which would constitute a breach of the agreement requiring immediate return. The dispute here lies in the damages prong.

In their Reply, the Employee Defendants argue this breach argument fails because "Barton cannot be damaged by the use of publicly available information, and damages are an essential element of Barton's breach of contract claim." (Doc. 57 at 4). However, as explained above, there is a factual dispute as to whether the information is in fact publicly available. *See supra* Section III.A.i. Furthermore, Barton also "alleges that the defendants knowingly obtained, used and disclosed internal and confidential Barton documents and information for the benefit of a competitor, AB Staffing Solutions, LLC ('AB Staffing') and caused harm to Barton," and that Defendant Trainor "solicited several of the Providers he had placed while at Barton." (Doc. 1 at 1, 13). Although there is no non-compete or non-solicitation provision at issue here, these allegations are relevant to show how the delayed return of the documents harmed Barton. *See, e.g.*, *People's Choice Mortg., Inc. v. Premium Capital Funding, LLC*, No. 06-3958-BLS2, 2010 WL 1267373, at *9 (Mass. Super. Mar. 31, 2010) (holding, before even considering the non-compete or non-solicitation provisions, that "Bodden violated his contractual duties to safeguard PCM's confidential information because, during his employment with PCM, he collected PCM documents containing customer lead information *for the purpose of continuing to solicit those customers while at Topdot*") (emphasis added). Further, Barton "believes that discovery will reveal that the Employees took even more Confidential information than that of which Barton is already aware." (Doc. 52 at 4). Of course, the Employee Defendants deny using the documents at AB Staffing, or that they have any other documents in their possession. But this only creates a dispute of fact.

In sum, because there remains a factual dispute as to the confidential nature of the documents and if/how Barton was damaged by the failure to return the documents, the Court denies the Motion for Judgment on the Pleadings as to both breach of contract claims.

**B. Conversion Claim**

For the following reasons, the Court will grant the Motion in favor of Defendant Guaglianone on the conversion claim but will deny the Motion as to Defendants Godbout and Trainor.

Under either Arizona or Massachusetts law, conversion is established by showing the "act of wrongful dominion or control over personal property in denial of or inconsistent with the rights of another." *Case Corp. v. Gehrke*, 208 Ariz. 140, 143, ¶ 11, 91 P.3d 362, 365 (App. 2004) (citation omitted); *In re Hilson*, 448 Mass. 603, 611, 863 N.E.2d 483, 491 (2007) ("The elements of conversion may be established by a showing that one person exercised dominion over the personal property of another, without right, and thereby deprived the rightful owner of its use and enjoyment.").

In some states, a conversion claim can only be brought for tangible personal property, or intangible property that has been "merged" with a tangible valuable document. *See, e.g.*, 18 Am. Jur. 2d Conversion § 7 ("An action for conversion ordinarily lies only for personal property that is tangible. Intellectual property can be reduced to a tangible form, which can then be subject to conversion."); *see also, e.g.*, *Beardmore v. Jacobsen*, 131 F.Supp.3d 656, 667 (S.D. Tex. 2015) (finding that, when an allegation involves only intellectual property rights rather than rights regarding physical property, it is outside the scope of Texas conversion law, which concerns only physical property). The primary argument for limiting the scope of the tort of conversion to tangible property is that it "seem[s] preferable to fashion other remedies, such as unfair competition, to protect people from having intangible values used and appropriated in unfair ways." W. Page Keeton, et al., Prosser and Keeton on the Law of Torts § 15, at 92 (5th ed. 1984).

Under Arizona law, it remains the rule that "[a]n action for conversion ordinarily lies only for personal property that is tangible, or to intangible property that is merged in, or identified with, some document." *Miller v. Hehlen*, 109 Ariz. 462, 472 (Ct. App. 2005) (claim for conversion of customer list was not appropriate because "Miller did not allege that Hehlen took a customer list in the form of a single, unified document that had value as

tangible property"); *see also Swisher Hygiene Franchise Corp. v. Clawson*, No. CV-15-1331-PHX-DJH, 2017 WL 11247886, at *9 (D. Ariz. Sept. 11, 2017) (conversion claim not appropriate for "documents to identify Swisher customers to go after" because "[t]he information is intangible but has not been merged in a document that has its own value in the same sense as a stock certificate or insurance policy"). Because documents containing valuable information are not themselves "independently valuable" but rather derive their value from the intangible information contained therein, and because intangible property cannot be converted under Arizona law, the document itself also cannot be converted. *See, e.g.*, *EJM Kyrene Prop. LLC v. KTR Prop. Tr. I*, No. CV-13-02660-PHX-SRB, 2014 WL 12672677, at *7 (D. Ariz. May 13, 2014) ("Plaintiff cannot bring a claim for conversion of 'confidential information' because it is not the type of property that can be subject to conversion."); *Scottsdale Ins. Co. v. Deanna K. Cook*, No. CV-10-1661-PHX-FJM, 2010 WL 4942764, at *3 (D. Ariz. November 24, 2010) (holding that although the documents the defendant acquired while employed with the defendant were tangible items, they did not confer any substantive rights; the information in the documents is intangible and not the proper subject of a conversion action).

Here, Only Defendant Guaglianone's employment agreement is governed by Arizona law. *See supra* Section III n.1. Barton alleges Guaglianone "emailed a Barton Provider curriculum vitae to his personal email and a blank Barton provider timesheet." (Doc. 1 at 15). Although Guaglianone did send himself electronic "documents," their value is derived from the information contained therein. Nowhere in the Complaint does Barton allege documents themselves are valuable as tangible property. Rather, Barton's allegations as to the value of the intangible property stems from the competitive advantage the information contained within them affords Barton. *See, e.g.*, (Doc. 1 at 18-29) ("Defendants knew that Barton's Provider information, Client information, and other confidential and/or proprietary business documents . . . were essential to Barton's competitive advantage."). The type of intangible information sought to be protected by Barton is not the proper subject of a conversion claim under Arizona law. Accordingly,

because the single provider CV and blank "timesheet" do not have "value as tangible property," the Arizona conversion claim fails as a matter of law. *Miller v. Hehlen*, 209 Ariz. at 472, 104 P.3d at 203.

However, other states have expanded the tort of conversion to include intangible property such as electronic documents, even if not reduced to an independently valuable tangible document. *See, e.g.*, *Thyroff v. Nationwide Mut. Ins.*, 8 N.Y.3d 283, 292-93 (2007) (reasoning that, because "it generally is not the physical nature of a document that determines its worth, it is the information memorialized in the document that has intrinsic value" and because "electronic records of customer contacts and related data has value . . . regardless of whether the format in which the information was stored was tangible or intangible," therefore "the protections of the law should apply equally to both forms—physical and virtual").

Massachusetts used to apply the traditional conversion rule still applied in Arizona. *See, e.g.*, *Exp. Lobster Co. Inc. v. Bay State Lobster* Co., No. CA926348E, 1994 WL 902930, at *6 (Mass. Super. Oct. 31, 1994) (rejecting conversion claim because "intangibles such as 'overseas contacts and management and sales techniques and expertise' may not be the subject of a conversion action"). However, Massachusetts has recently expanded the tort to include intangibles. *See, e.g.*, *Network Sys. Architects Corp. v. Dimitruk*, Suffolk Sup.Ct. civ. action no. 06-4717-BLS2, 2007 WL 4442349, at *10 (Mass. Super. 2007) ("NSA responds by clarifying that the subject of its conversion claim is not information, but computer files containing such information. In the modern world, computer files hold the same place as physical documents have in the past. If paper documents can be converted, as they no doubt can, no reason appears that computer files cannot.") (internal citations omitted). Massachusetts has even held that, where electronic documents are converted, it is immaterial that the original possessor maintains access to copies of the documents. *See, e.g.*, *Governo Law Firm, LLC v. CMBG3 Law, LLC*, No. 1684-CV-03949-BLS-2, 2019 WL 3801560, at *3 (Mass. Super. July 29, 2019) (rejecting defendants' argument that "the copying of intangible electronic files containing valuable

business information cannot give rise to a claim for conversion, because such property is not a physical chattel" and further rejecting the argument that "there could be no conversion here because the [plaintiff] retained copies of all the materials taken by Defendants").

In its Motion for Judgment on the Pleadings, Defendants sole argument on conversion is that "[t]he providers' CV and blank timesheet are not property that can serve as the basis for a conversion claim" and that "[t]here is no allegation in the pleadings that Barton was deprived of the property or that Barton could not continue to use it." (Doc. 46 at 3) (citing Arizona law). However, as cited above, recent Massachusetts case law suggests the intangible documents at issue in this case can form the basis of a conversion claim, and that the claim can survive regardless of whether Barton maintains access to copies of the documents and/or the information contained therein. Accordingly, the Court will not grant Judgment on the conversion claims against Defendants Godbout and Trainor, whose employment contracts are governed by Massachusetts law.

## IV.  CONCLUSION

Because there remain issues of fact regarding the availability of the information to the public and the extent to which the Employee Defendants have used the information to harm Barton, the Court will not grant judgment on the breach of contract claims. Regarding the conversion claim, the Court will grant judgment in favor of Defendant Godbout because his employment is governed by Arizona law, which precludes conversion claims for the intangible property at issue here. However, because Massachusetts law does not bar conversion claims based on electronically stored intangible property, the Court will deny the Motion as to Defendants Guaglianone and Trainor. Accordingly,

**IT IS ORDERED** that Defendant Jamie Trainor's Motion for Judgment on the Pleadings (Doc. 46) is **granted in part** and **denied in part** as follows:

1. The Motion is granted in so far as it seeks judgment on the conversion claim against Defendant Guaglianone;

///

///

2. The Motion is denied in so far as it seeks judgment on the conversion claim against Defendants Godbout and Trainor or on the breach of contract claim against all Employee Defendants.

Dated this 18th day of December, 2020.

                Honorable Steven P. Logan
                United States District Judge